[No. 37749-3-I.   Division One.   September 28, 1998.]

*In the Matter of the Marriage of* MARTYNA M. THURSTON, *Respondent,* and ROBERT H. THURSTON, *Appellant.*

*Randolph I. Gordon* of *Casey & Gordon*; and *A. Kyle*

*Johnson* of *Chism, Jacobson & Johnson, P.L.L.C.*, for appellant.

*Edward R. Skone* of *Kinzel, Allen, Skone & Searing, Inc., P.S.*; and *William R. Bishin* of *William R. Bishin, Inc., P.S.*, for respondent.

Cox, J. — Robert Thurston and Martyna Mandel,[1] former spouses, each appeal a 1995 decree that was entered following a trial that was conducted after the court partially vacated a 1989 dissolution decree. Primarily at issue are the propriety of the trial court's partial vacation of the 1989 decree and the characterization and division of the parties' property in the 1995 decree.

Because a material condition of the parties' 1989 decree did not occur and the nonoccurrence of that condition constituted an extraordinary circumstance, the court did not abuse its discretion by granting the CR 60(b)(11) motion. Further, the trial court's characterization of assets as expressed in its findings of fact is supported by substantial evidence, and the findings support the conclusions of law. Finally, the property division is just and equitable, considering all the circumstances. Accordingly, we affirm.

Mandel and Thurston married in 1976 and separated in November 1985. Both parties brought substantial assets to the marriage. In December 1989, the trial court entered a decree of dissolution that, among other things, divided property between Thurston and Mandel. The property division was based on a settlement between the parties that had previously been read into the record. The property

---

[1] Martyna Mandel was formerly known as Martyna Thurston.

described in the decree that is relevant to this appeal relates to the development of the Bellevue Athletic Club (BAC). More specifically at issue are Westersun Corporation, Pacific Recreation Associates (PRA), and Pacific Recreation Corporation (PRC).

Some 19 months after the entry of the 1989 decree, Mandel moved, pursuant to CR 60(b)(11), to vacate the property disposition provisions of the decree. She argued that the decree expressly provided for transfer to her of two units of the limited partnership, PRA, that Westersun owns. She contended that the corporation had not cooperated in the transfer, that efforts to negotiate resolution of this problem had proven to be unsuccessful, and that Thurston was taking the position that the decree did not provide for immediate transfer to her of the two partnership units. According to her, these events frustrated the terms of the property settlement agreement and decree. The court agreed and granted the motion, subject to Mandel's payment of terms to Thurston.

Thereafter, following the parties' failure to settle on a new division of property, the court conducted a trial. Following entry of new findings of fact and conclusions of law and a new decree, each party moved for reconsideration. The court substantially denied these motions, and each party appeals.

Subject Matter Jurisdiction and CR 60(b)

Thurston argues that the trial court lacked subject matter jurisdiction to vacate the 1989 decree of dissolution. He bases this argument on RCW 26.09.170. Because this argument ignores the power of superior courts to hear dissolution matters and is based on a misreading of the cited statute, we reject it.

The question of subject matter jurisdiction is a question of law that we review de novo.[2] Subject matter ju-

_____

[2]*Bour v. Johnson*, 80 Wn. App. 643, 647, 910 P.2d 548 (1996).

risdiction is "the authority of the court to hear and determine the class of actions to which the case belongs."[3] Superior courts are courts of general jurisdiction.[4] As such, they have "the power to hear and determine all matters, legal and equitable, . . . except in so far as these powers have been expressly denied."[5] By statute, superior courts sit as family courts to resolve disputes under RCW Title 26.[6] Because superior courts enjoy a broad constitutional and statutory grant of subject matter jurisdiction in the area of marital dissolution, "courts may only find a lack of jurisdiction under compelling circumstances, such as when it is explicitly limited by the Legislature or Congress."[7]

■■ Thurston ignores the constitutional and statutory grant of power to the superior courts to hear and determine all dissolution matters. Instead, he argues that a superior court's subject matter jurisdiction is expressly limited by RCW 26.09.170(1), which provides that:

> The provisions as to property disposition may not be revoked or modified, *unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.*[8]

Thurston's argument is based on a misreading of the statute. The statute does not limit the subject matter jurisdic-

---

[3]*In re Adoption of Buehl*, 87 Wn.2d 649, 655, 555 P.2d 1334 (1976).

[4]Const. art. IV, § 6.

[5]*State ex rel. Martin v. Superior Court*, 101 Wash. 81, 94, 172 P. 257, 4 A.L.R. 572 (1918).

[6]RCW 26.12.010(1) provides: "Each superior court shall exercise the jurisdiction conferred by this chapter and while sitting in the exercise of such jurisdiction shall be known and referred to as the 'family court.' A family law proceeding under this chapter is any proceeding under this title or any proceeding in which the family court is requested to adjudicate or enforce the rights of the parties or their children regarding the determination or modification of parenting plans, child custody, visitation, or support, or the distribution of property or obligations."

[7]*In re Marriage of Major*, 71 Wn. App. 531, 534, 859 P.2d 1262 (1993).

[8](Emphasis added.)

tion of superior courts. Rather, the plain words of the statute describe the circumstances under which a court that has subject matter jurisdiction may revoke or modify the property division provisions of a dissolution decree. The trial court had subject matter jurisdiction to consider Mandel's CR 60(b) motion.

■■ The more pertinent question that Thurston raises is whether the court abused its discretion in granting Mandel's CR 60(b) motion.[9] We hold that it did not.

CR 60(b) provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . .
>
> . . . .
>
> (11) Any other reason justifying relief from the operation of the judgment.

Application of this provision is limited to " 'situations involving extraordinary circumstances not covered by any other section of the rule.' "[10] Such circumstances normally involve " ' "irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceedings." ' "[11] Errors of law may not be corrected by a CR 60 motion, but must be raised on appeal.[12] Unlike motions brought pursuant to CR 60(b)(1)-(3), which must be brought within one year after the order or judgment

---

[9]*State v. Santos*, 104 Wn.2d 142, 145, 702 P.2d 1179, 70 A.L.R.4TH 1021 (1985) (we will reverse a trial court's decision on a CR 60(b) motion only upon a showing of a manifest abuse of discretion).

[10]*Lane v. Brown & Haley*, 81 Wn. App. 102, 107, 912 P.2d 1040 (quoting *Gustafson v. Gustafson*, 54 Wn. App. 66, 75, 772 P.2d 1031 (1989)), *review denied*, 129 Wn.2d 1028 (1996).

[11]*In re Marriage of Flannagan*, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985) (quoting *State v. Keller*, 32 Wn. App. 135, 141, 647 P.2d 35 (1982)), *review denied*, 105 Wn.2d 1005 (1986).

[12]*In re Marriage of Tang*, 57 Wn. App. 648, 654, 789 P.2d 118 (1990).

was entered, a CR 60(b)(11) motion must be brought within a "reasonable time."[13]

Here, 19 months after entry of the 1989 decree, Mandel moved, under CR 60(b)(11), to vacate the provision of that decree dealing with two partnership units. These units were of substantial value and a significant part of the total settlement. Under these facts; both the timing and the merits of Mandel's motion are at issue.

Thurston first argues that Mandel failed to bring the motion within a "reasonable time" as required by CR 60(b). We cannot agree.

■ Courts have observed that what constitutes a reasonable time depends on the facts of the case.[14] The mere passage of time between the entry of the judgment and the motion to set it aside is not controlling. Rather, a triggering event for the motion may arise well after entry of the judgment that the moving party seeks to vacate.[15] Major considerations that may be relevant in determining timeliness are whether the nonmoving party is prejudiced by the delay and whether the moving party has a good reason for failing to take action sooner.[16]

Here, the trial court was clearly troubled by the long delay between the entry of the decree and the filing of the motion.[17] The trial judge noted that Mandel learned soon

---

[13]CR 60(b)(11) states: "The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken."

[14]*In re Pacific Far E. Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989) (considering Fed. R. Civ. P. 60(b)(6), the parallel federal rule to CR 60(b)(11)).

[15]*Pacific Far E. Lines*, 889 F.2d at 249; *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992) (citing *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044 (2d Cir. 1982) and *Clarke v. Burkle*, 570 F.2d 824 (8th Cir. 1978)).

[16]*Pacific Far E. Lines*, 889 F.2d at 249.

[17]The court stated: "The most troubling aspect of the case is the long delay of some 19 months from the entry of the Decree to the Motion to Vacate. Throughout that period of time Petitioner was aware of the fact that [Thurston's brother] would not yield on the transfer and steps were taken to reach an alternate agree-

after the entry of the 1989 decree that Thurston's brother, who was hostile to Thurston and who was not a party before the court, would not cooperate in the transfer of the two partnership units held in the name of Westersun. Thurston's brother had a significant interest in Westersun and had the ability to thwart transfer of the partnership units held by the corporation to Mandel. The trial court also noted Mandel's efforts, over time and before bringing the motion, to reach an alternate agreement with Thurston without court intervention. From our review of the record, it appears that the event that triggered the motion to vacate was Thurston's new statement of position shortly before that motion. He indicated that the 1989 decree was not intended to immediately convey any interest in the partnership units to Mandel. Rather, according to him, she was to receive those units at a future time. This statement appears to be at odds with the 1989 decree and the colloquy among counsel and the judge who entered that decree.

Thurston relies on *Delzona Corp. v. Sacks*[18] to support his claim that Mandel's motion was not timely. But that case is distinguishable.

There, in a Rule 60 motion brought more than two years after the entry of judgment, the defendants claimed that the Delzona Corporation lacked authority to sell certain realty to recover its judgment. But six months after the entry of judgment, the judgment debtors had cooperated in the very sale that was the subject of their Rule 60 motion. The court concluded that, because the judgment debtors knew all of the facts that formed the basis of their Rule 60 motion a year and a half before moving for vacation, the motion was untimely. Here, in contrast, Mandel did not learn of Thurston's new statement of position regarding the transfer of the units until shortly before she brought her CR 60(b)(11) motion.

ment. This motion could have—and should have—been made sooner. But the Court perceives no prejudice to [Thurston] to justify slamming the courthouse door on [Mandel]'s plea for justice."

[18]265 F.2d 157 (3d Cir. 1959).

Here, the trial court noted both in its oral and written decisions[19] that it was exercising its equitable power under the rule to grant the motion. There was no prejudice to Thurston by virtue of the delay between his new statement of position and the motion. To the extent that there was any inconvenience to Thurston, the trial court dealt with that by granting terms, a decision neither party to this appeal challenges. Moreover, the court could have reasonably concluded that Thurston's recently announced change of position regarding the transfer of the units justified the timing of Mandel's motion. On these particular facts, the court's decision is not untenable.[20] The court did not abuse its discretion in determining that the motion was brought within a reasonable time.

Having determined that the motion was timely, we next consider whether it was properly granted. Mandel's motion was directed to paragraph 8 of the 1989 decree, which stated:

[Mandel] is hereby awarded, as her sole and separate property, free and clear of any claims of [Thurston], and [Thurston] hereby quit claims, releases, and relinquishes unto [Mandel] all right, title, and interest in and to the . . . described property: . . .

(8) Two units of Pacific Recreation Associates, a limited partnership, held in the name of the Westernsun [sic] Company, a corporation. [Thurston] hereby relinquishes all right, title, and interest in said two units to [Mandel], provided that she shall not sell said two units to [Thurston's] brother,

[19]In its finding of fact No. 5, the court stated: "Other than increased expense and the loss of finality in the decree, respondent has not shown additional prejudice as a result of the 19-month span between the decree and this motion to vacate."

[20]*See, e.g., Washington v. Penwell*, 700 F.2d 570 (9th Cir. 1983) (FED. R. CIV. P. 60(b) motion timely when it was filed four years after entry of consent decree, but only two months after trial court's finding regarding parties' compliance with decree); *Dunlop*, 672 F.2d 1044 (FED. R. CIV. P. 60(b) motion when it was filed two years after entry of settlement, but only four months after moving party learned of grounds for motion); *Clarke*, 570 F.2d 824 (FED. R. CIV. P. 60(b) motion timely when it was filed years after entry of judgment, but soon after subsequent court decision provided reason for motion).

Bill Thurston[,] or Joe Shepard, or their assignees or designees, without the prior express written permission of [Thurston].

Mandel essentially argued that she was to obtain a prompt transfer to her of the two partnership units of PRA and that the property settlement was conditioned on that prompt transfer. Thurston opposed the motion, taking the position that the transfer was not to occur until a future time. It was uncontested that Westersun, the corporation in which Thurston held stock, held the two partnership units described in the decree at the time of its entry. After considering the affidavits of the parties, the memoranda, and the oral argument of counsel, the court concluded that the award of the two units to Mandel was a material condition of the settlement and that the nonoccurrence of that condition constituted extraordinary circumstances warranting relief. In reaching this conclusion, the court focused, in great part, on the colloquy of then counsel for the parties at the time of the entry of the 1989 decree:

> The colloquy among the Court and both counsel clearly contemplated [that the transfer of the two partnership units] was a "condition to this agreement" which, if it did not occur, would "throw the whole settlement out". That's the language of [Thurston's then counsel] on December 18 of 1989. It was not "an interest in a future contingency" which might not occur for several years, as now argued by [Thurston].

The court's decision to grant the requested relief was well within the bounds of its discretion. Counsel for the parties clearly expressed the view at the time of entry of the 1989 decree that the conveyance of the two partnership units to Mandel was an express condition of the agreement. This is confirmed by the record, which shows that the partnership units represented a significant part of the settlement. Thus, the condition was material. Moreover, the decree clearly provides that Thurston "quit claims, releases, and relinquishes unto [Mandel] all right, title, and interest" in the two partnership units. This language cannot reasonably be reconciled with Thurston's assertion

just prior to Mandel's motion that he retained an interest in the partnership units after the decree and until some future time when Mandel would receive those units. The court did not abuse its discretion in setting aside the prior decree.

We affirm the decree of dissolution.

The remaining portion of this decision has no precedential value and will not be published.[21]

KENNEDY, C.J., and COLEMAN, J., concur.

Review denied at 137 Wn.2d 1023 (1999).