# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HELEN YANKEE and DAVID EARL YANKEE, as individuals and as a part of the marital community comprised thereof,<br><br>     Appellants,<br><br>    v.<br><br>FRANTZ JEROME-PIERRE, M.D.,[†] and "JANE DOE" JEROME-PIERRE, husband and wife and the marital community comprised thereof; GROUP HEALTH COOPERATIVE, a Washington Corporation; and OVERLAKE HOSPITAL MEDICAL CENTER, a Washington Corporation,<br><br>     Respondents,<br><br>TIM SCEARCE, M.D. and "JANE DOE" SCEARCE, husband and wife and the marital community comprised thereof,<br><br>     Defendants. | No. 77544-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 11, 2019 |

MANN, A.C.J. — Helen and David Yankee appeal the denial of their CR 60(b) motion to vacate orders of judgment in a medical malpractice action. Because the

Yankees do not demonstrate that the trial court abused its discretion in denying the motion, we affirm.[1]

I.

On October 31, 2010, Helen Yankee was transported to Overlake Hospital by ambulance after suffering stroke-like symptoms and a fall at her home.[2] Neurologist Dr. Timothy Scearce, an employee of Group Health Cooperative, determined that the window of opportunity to perform intravenous thrombolytic treatment had passed and recommended that Helen undergo intra-arterial thrombolytic treatment. Interventional radiologist Dr. Frantz Pierre-Jerome performed the intra-arterial procedure.

On October 31, 2014, the Yankees sued Dr. Scearce, Dr. Pierre-Jerome, Overlake Hospital, and Group Health Cooperative for negligence. The Yankees claimed that a complication arose during the intra-arterial procedure that resulted in the dissection of Helen's carotid artery, and that the doctors breached the standard of care by failing to administer thrombolytic treatment intravenously.

All defendants moved for summary judgment. On June 5, 2015, the parties stipulated to the dismissal of Dr. Scearce as a defendant. On August 17, 2015, the trial court granted summary judgment dismissal of Dr. Pierre-Jerome as a defendant. On the same day, the Yankees moved to amend the complaint to add a claim for failure to

---

† The original complaint lists Frantz Jerome-Pierre's name incorrectly. His name is Frantz Pierre-Jerome.

[1] Although we recognize that the Yankees are pro se on appeal, we hold self-represented litigants to the same standards as attorneys. See In re Pers. Restraint of Rhem, 188 Wn.2d 321, 328, 394 P.3d 367 (2017).

[2] The facts are taken from the Yankees' complaint and the declarations filed in support of their response to summary judgment.

obtain informed consent, contending that they were inadequately advised of the risks of the intra-arterial procedure.[3] The trial court denied the motion.

The case proceeded to trial against Overlake Hospital and Group Health Cooperative. The Yankees stipulated to a motion in limine to exclude any evidence involving the informed consent claim. A jury found in favor of the defendants. On September 6, 2016, the trial court entered a judgment and final order of dismissal. The Yankees did not appeal.

On September 1, 2017, acting pro se, the Yankees filed a CR 60(b) motion to vacate all of the dismissal orders. The Yankees asserted that only a "board-certified neuro-interventional radiologist" would be qualified to perform the intra-arterial procedure. The Yankees contended that Dr. Pierre-Jerome obtained their consent to the procedure without informing them that he was not a neurologist. They argued that, in performing the procedure, Dr. Pierre-Jerome "represented by conduct" that he possessed the necessary qualifications, which constituted fraud or misconduct entitling them to vacation of the judgment pursuant to CR 60(b)(4) and CR 60(b)(11).[4]

The trial court denied the Yankees' motion to vacate. The Yankees appeal.

II.

We review a trial court's denial of a motion to vacate for abuse of discretion. Haley v. Highland, 142 Wn.2d 135, 156, 12 P.3d 119 (2000). The trial court's decision will only be disturbed "if there is a clear showing that the exercise of discretion was

---

[3] Although the motion is discussed by parties, the Yankees did not designate the motion as part of the record on appeal.

[4] The Yankees also cited CR 60(c), which permits a court "to entertain an independent action to relieve a party from a judgment, order, or proceeding." But, by its very terms, CR 60(c) contemplates a party's commencement of a separate action to vacate the judgment.

3

manifestly unreasonable, based on untenable grounds, or based on untenable reasons." Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). Review of a decision on a motion to vacate is limited to the decision on the motion, not the underlying judgment. Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980). The exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not by appeal from a denial of a CR 60(b) motion. Bjurstrom, 27 Wn. App. at 450-51; RAP 2.2(a)(10); RAP 2.4(c).

CR 60(b)(4) provides for the vacation of a judgment for fraud, misrepresentation, or other conduct of an adverse party. Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). "The rule does not, however, permit a party to assert an underlying cause of action for fraud that does not relate to the procurement of the judgment." Lindgren, 58 Wn. App. at 596. The "fraudulent conduct or misrepresentation must cause the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." Lindgren, 58 Wn. App. at 596. Our review is limited to determining whether the evidence shows that fraud, misrepresentation, or misconduct was "highly probable." Dalton v. State, 130 Wn. App. 653, 666, 124 P.3d 305 (2005).

Here, the Yankees' allegations are not of the type that serve as a basis for vacation of the orders pursuant to CR 60(b)(4).[5] The rule contemplates fraud perpetrated by a party in obtaining the judgment. See RCW 4.72.010. Typical examples include perjured testimony or the withholding of documents during discovery. See KARL

---

[5] The Yankees argue that the trial court addressed only CR 60(b)(11) and failed to consider their motion under CR 60(b)(4). While the trial court may not have referred explicitly to CR 60(b)(4) it is clear that the trial court considered the Yankees' allegations of fraud regarding Dr. Pierre-Jerome's qualifications. For example, in its oral ruling, the trial court stated:
> What's been brought here is—has nothing to do with any fraud that was perpetrated during the discovery process or during the course of trial.

B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE (6th ed. 2013). But the Yankees fail to establish any fraud relating to the procurement of the judgment.[6] There is no question that the Yankees were aware of Dr. Pierre-Jerome's qualifications during the proceedings in the trial court; the record shows that a copy of his physician biography on the Overlake Hospital website was available in discovery. Furthermore, at no time during the underlying action did the Yankees claim that Dr. Pierre-Jerome was unqualified to perform the intra-arterial procedure. Therefore, even if, as the Yankees allege, Dr. Pierre-Jerome did not discuss his qualifications prior to obtaining consent for the procedure, it had no bearing on the judgments in favor of the defendants.

Nor did the Yankees establish they were entitled to relief under CR 60(b)(11). CR 60(b)(11) provides that the court may vacate an order for "[a]ny other reason justifying relief from the operation of the judgment." Despite its broad language, CR 60(b)(11) is "not a blanket provision authorizing reconsideration for all conceivable reasons." State v. Keller, 32 Wn. App. 135, 141, 647 P.2d 35 (1982). Rather, [r]elief pursuant to CR 60(b)(11) should be confined to "situations involving extraordinary circumstances not covered by any other section of the rule." In re Marriage of Thurston, 92 Wn. App. 494, 499, 963 P.2d 947 (1998). We apply CR 60(b)(11) only "to serve the ends of justice in extreme, unexpected situations." In re Detention of Ward, 125 Wn. App. 374, 379, 104 P.3d 751 (2005). As discussed above, the Yankees chose not to litigate a claim regarding Dr. Pierre-Jerome's qualifications, despite being aware of them at the time of trial. They fail to establish any extraordinary circumstances requiring vacation of the

---

[6] The Yankees' brief focuses on the elements of a cause of action for fraud. This is distinct from fraud as contemplated by CR 60(b)(4).

judgments, and the trial court did not abuse its discretion in denying the CR 60(b) motion.[7]

Finally, the Yankees contend, for the first time on appeal, that the trial court erred in dismissing the informed consent claim "on stipulated summary judgment" because Helen "did not have the capacity to consent to dismissing the informed consent claim." But even if this court were to exercise its discretion and consider this claim under RAP 2.5(a), the trial court denied the Yankees' motion to amend the complaint to plead an informed consent claim. No stipulation was involved.

We affirm the trial court's denial of the Yankees' CR 60(b) motion.

_____ Mann, A.C.J.

WE CONCUR:

_____ Andrus, J.

_____

---

[7] Because we conclude that the Yankees did not establish a basis for relief, we do not address the respondents' claims that the Yankees' CR 60 motion was procedurally defective.