FILED
11/16/2020
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

CAROLINE G FELDMANN,

Appellant,

v.

RAYMOND AND GAYLE HARVIE,

&

PALISADES COLLECTIONS, LLC,

Respondents.

No. 79732-8-I

DIVISION ONE

UNPUBLISHED OPINION

ANDRUS, A.C.J. — Caroline Feldmann[1] appeals an order denying her CR 60 motion to vacate an order disbursing surplus funds from the foreclosure of her home to several creditors.  Because the trial court did not abuse its discretion in denying this motion under the CR 60(4) and (11), we affirm.

## FACTS

On March 10, 2017, Northwest Trustee Services, Inc. sold Feldmann's home to a third party at a non-judicial foreclosure sale.  It subsequently deposited

---

[1] Caroline Feldmann is also referred to as Caroline Pepperell in the record.  For the sake of clarity, we will refer to her only as Feldmann.

Citations and pin cites are based on the Westlaw online version of the cited material.

$184,540.11 of surplus funds into the registry of the Snohomish County Superior Court.

Three of Feldmann's creditors, Raymond and Gayle Harvie, Rao & Pierce, PLLC (Rao & Pierce), and Palisades Collection, LLC (Palisades), filed motions seeking disbursement of a portion of these surplus funds. The trial court found that each creditor, in filing these motions, "had strictly complied with the statutory procedure to give notice" to Feldmann. Feldmann, however, filed no written response to these motions.

On May 4, 2017, the day the motions were set for hearing, counsel for the Harvies and Rao & Pierce appeared but neither Feldmann nor counsel for Palisades was present when the court called the case for hearing. The trial court found that all persons entitled to notice had received it and no one had appeared or filed any objections to the disbursements. It signed the uncontested order authorizing the disbursement of $104,068.62 to the Harvies and $30,140 to Rao & Pierce. Because Palisades did not appear, the trial court amended the proposed order to delete any reference to its disbursement request. The other creditors did not object to the court amending the order to allow Palisades' claim if counsel ultimately appeared because there were sufficient funds to satisfy the judgments held by all three creditors.

An hour later, Feldmann and Palisades' attorney appeared in the courtroom. Feldmann represented to the trial court that she had mistakenly gone to the wrong courtroom. She asked the court not to disburse any of the funds and to cancel the prior order disbursing funds to the Harvies and Rao & Pierce because she wanted

to have the foreclosure sale rescinded. Feldmann did not request the funds be distributed to her. The court informed Feldmann it would not rescind the order of disbursement because she had failed to file a written response to the motions and her oral response provided no valid basis for denying the creditors' motions.

The court then granted Palisades' motion and signed an amended order authorizing the clerk to disburse an additional sum of $17,346.66 to Palisades after it made the ordered payments to the Harvies and Rao & Pierce. The trial court "clearly and fully advised [Feldmann] orally" that it had signed the order of disbursement and provided a copy to her. The trial court also informed Feldmann that if she wanted to revisit the disbursements, she needed to note a motion and give the creditors notice so that they could be present. Feldmann neither sought reconsideration nor appealed the court's ruling.

Fifteen months later, in August 2018, Feldmann filed a motion to vacate the May 4, 2017 order of disbursement pursuant to CR 60(b)(4) and (11). Feldmann argued for the first time that she had a statutory homestead exemption that took priority over the unsecured creditors' claims and these creditors committed fraud on the court by failing to disclose this exemption. She also contended that the court should vacate the order because it was erroneous and violated public policy in light of her statutory homestead rights.

The court denied the motion, concluding that Feldmann failed to establish any of the creditors committed fraud under CR 60(b)(4) and that CR 60(b)(11) did not apply because Feldman could have obtained relief with a timely motion under CR 60(b)(1) based on her own excusable neglect. The trial court granted

Feldmann's request to have the $32,984.83 remaining in the registry of the court disbursed to her.

Feldmann appeals.

ANALYSIS

Feldmann contends the trial court erred in denying her motion to vacate because her statutory homestead right was superior to the interests of the two unsecured creditors, the Harvies and Palisades. Because her rights were superior, she argues, the trial court should have vacated the disbursement order and disbursed $125,000 to her. The Harvies ask the court to affirm the trial court and to award them attorney fees for this appeal.

A.      Feldmann's CR 60(b) Motion

Feldmann argues the trial court erred in denying her motion to vacate the order of disbursement. This court reviews a decision to deny a motion to vacate a judgment for abuse of discretion. Morin v. Burris, 160 Wn. 2d 745, 753, 161 P.3d 956 (2007). A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons. Id.

Feldmann seems to contend that the trial court erred in concluding that the unsecured creditors' rights to the surplus funds were superior to her rights under the Homestead Act. Under RCW 6.13.010, real property used by its owner as a residence is considered that owner's "homestead." A homestead is exempt from execution, attachment or seizure to satisfy a judgment up to the lesser of the total net value of the land and home, or the sum of $125,000. RCW 6.13.030. Property that meets the homestead requirements is automatically protected from execution

- 4 -

while the owner occupies it as a principal residence. RCW 6.13.040. And the homestead, if it exists, is presumed valid until the validity is contested in a court. RCW 6.13.070. Judgments against the owner of a homestead become a lien on the value of the property in excess of the exemption. RCW 6.13.090. Under these provisions, had Feldman raised a homestead exemption at the time the unsecured creditors sought disbursement of surplus funds, she may have been able to establish priority to the funds ultimately disbursed to the Harvies and Palisades.

But Feldmann misunderstands the scope of our review in this appeal. When a trial court denies a motion to vacate an order or judgment under CR 60, our review is limited to the decision on that motion; we do not revisit the propriety of the underlying order to disburse surplus funds. See Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980) (exclusive procedure for attacking defective judgment is by appeal from that judgment, not appeal from denial of CR 60(b) motion). We therefore confine our analysis to whether the trial court abused its discretion in refusing to vacate the order of disbursement under the two provisions Feldmann raised below, CR 60(b)(4) and CR 60(b)(11).

Feldmann first argues the trial court erred in refusing to vacate the disbursement order because the Harvies and Palisades misrepresented that their interests were superior to her right to receive $125,000 of the surplus funds under the Homestead Act.[2] She points to Gayle Harvie's declaration in which she testified that "[b]ased on review of the litigation guarantee filed with the Notice of

---

[2] Feldmann concedes that Rao & Pierce, as a secured creditor, had a superior interest in the funds and does not contest the distribution of $30,140 to it.

Deposit of Surplus Funds . . . [the Harvies] have priority over all other interested parties except Snohomish County . . . and RAO & Pierce, PLLC . . . ".

CR 60(b)(4) authorizes a trial court to vacate a judgment for fraud, misrepresentation, or other misconduct of an adverse party. This rule is designed to address judgments that were unfairly obtained, not judgments that may be factually incorrect. Peoples State Bank v. Hickey, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989). The party requesting relief must provide clear and convincing evidence of fraud, misrepresentation, or misconduct. Id. Furthermore, the misconduct or misrepresentation "must cause the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case." Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990) (emphasis omitted). "It is immaterial whether the misrepresentation was innocent, . . . the result of carelessness, or deliberate." Hickey, 55 Wn. App, at 371.

The trial court concluded Feldmann had not demonstrated that her unsecured creditors made any misrepresentation because they based their claim of priority solely on what appeared in the litigation guarantee. It also found Feldmann failed to prove that any inaccurate statement regarding the priority of claims caused the entry of an incorrect order. Because Feldmann could have filed a written opposition to the motions and claimed her homestead exemption in the timely manner, she had the opportunity to have her rights litigated. The court further concluded that Feldmann did not allege that the Harvies misled her, only that she thought the creditors and their attorneys should have advised her of her potential homestead rights. But the trial court determined the creditors had no

obligation to provide Feldmann legal advice and Feldmann had not provided them with any factual evidence from which a creditor could glean that she was entitled to such a homestead exemption. We cannot conclude, based on this record, that the trial court abused its discretion in denying Feldmann's CR 60(b)(4) motion.

Hickey is instructive here. In that case, Hickey acquired a lien against her ex-husband's property as part of the property distribution following their divorce. 55 Wn. App. at 368. Peoples State Bank loaned money to Hickey's ex-husband after the entry of the decree and secured the loan through a mortgage against the same property. When the bank initiated foreclosure proceedings following the ex-husband's default, it named Hickey as a party and claimed her interest was inferior and subordinate to its lien. Id. Hickey, although served with the complaint, failed to appear and a default judgement was entered against her. Id. at 369. Two-and-a-half years later, she moved to set aside the judgment pursuant to CR 60(b)(4), arguing the bank had mispresented the priority of her lien. In her affidavit, she disclaimed any understanding of the word "subordinate." Id. at 370.

The court concluded that Hickey had made a strong showing that the bank had misrepresented the status of its lien on Hickey's property. Id. at 371. But it nevertheless affirmed the denial of her motion to vacate, explaining:

> Although Peoples misrepresented the status of Hickey's lien, there is no connection between the bank's misrepresentation and Hickey's failure to respond to the complaint or employ an attorney. There is no evidence that Hickey relied on the misrepresentation or was misled by People's statements in the complaint . . . . The misrepresentation having nothing to do with her failure to respond to the summons and complaint, Hickey cannot meet the requirement that the misrepresentation must have operated to prevent her from fully and fairly presenting her case.

Id. at 372.

This case is less compelling than the evidence in <u>Hickey</u>. Here, Feldmann has not made a strong showing that the unsecured creditors made factual misrepresentations. Feldmann presented no evidence that the Harvies or Palisades hid any underlying facts from the court, held themselves out as secured creditors, or claimed that Feldmann did not have homestead rights.

But as in <u>Hickey</u>, Feldmann failed to establish that the Harvies' assertion of superior rights prevented her from fully and fairly presenting her case. Like Hickey, the reason Feldmann failed to assert her rights was her lack of understanding of those rights. Feldmann filed a declaration indicating that "[a]t the time of the hearing, [she] did not know [she] was entitled to receive $125,000 of the surplus" under the Homestead Act. Also like Hickey, Feldmann did not contend she relied on any statements made by the Harvies or Palisades in choosing not to oppose their motions. <u>Hickey</u> provided the trial court with a well-founded basis for denying Feldmann's CR 60(b)(4) motion.

Feldmann argues that, had opposing counsel informed her of her homestead rights, she would have asserted them. As the trial court pointed out, this argument might have supported a timely motion to vacate under CR 60(b)(1), based on excusable neglect, but it does not support the contention that she was affirmatively misled. The trial court correctly rejected Feldmann's ignorance of the law argument because the attorneys for the Harvies and Palisades "had no obligation to give [Feldmann] legal advice, and they may have had a legal obligation not to give her legal advice."

Feldmann further contends that the Homestead Act "provides legal obligation[s] that must be met by unsecured creditors when requesting disbursement of surplus funds." But she cites no specific statutory provision or case law supporting the proposition that creditors are obligated to advise judgment debtors of their ability to claim a homestead exemption. We can find no authority supporting the proposition that courts must indefinitely hold surplus funds for a party who may have a homestead right to those funds but fails to timely assert that right.

The trial court did not abuse its discretion in denying Feldmann's motion under CR 60(b)(4).

Feldmann next argues the trial court should have vacated the order of disbursement under CR 60(b)(11) because it would be a manifest injustice to allow an unsecured creditor "to keep over $100,000.00 dollars of constitutionally protected funds." But Feldmann's reliance on CR 60(b)(11) is inappropriate under the facts of this case.

CR 60(b)(11) permits the vacation of a judgment for "[a]ny other reason justifying relief from the operation of the judgment." "CR 60(b)(11) is a catch-all provision, intended to serve the ends of justice in extreme, unexpected situations." State v. Ward, 125 Wn. App. 374, 379, 104 P.3d 751 (2005). This provision is reserved for "situations involving extraordinary circumstances not covered by any other section of the rule." Summers v. Dep't of Revenue, 104 Wn. App. 87, 93, 14 P.3d 902 (2001). Such circumstances must relate to irregularities extraneous to

the court's action or questions concerning the regularity of the court's proceedings. In re Marriage of Yearout, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985).

Washington courts have found "extraordinary circumstances" to exist where there has been a post-judgment change in the law. See Union Bank, N.A. v. Vanderhoek Associates, LLC, 191 Wn. App. 836, 845, 365 P.3d 223 (2015) ("A change in the law may constitute such extraordinary circumstances."); Estate of Treadwell v. Wright, 115 Wn. App. 238, 61 P.3d 1214 (2003) (the trial court abused its discretion in denying the motion to vacate based on a change in the law.). Our courts have also found such circumstances to exist in situations outside the control of the moving party. See In re Marriage of Thurston 92 Wn. App. 494, 496, 963 P.2d 947 (1998) (holding the nonoccurrence of a material condition to a dissolution settlement to be an extraordinary circumstance warranting court intervention); Barr v. MacGugan, 119 Wn. App. 43, 47-48, 78 P.3d 660 (2003) (vacation was appropriate where an attorney's mental illness caused him to neglect his practice and his client acted diligently to learn the status of the case).

This court has also concluded that vacation may be appropriate in situations involving a manifest injustice. In In re Marriage of Hammack, 114 Wn. App. 805, 810-11, 60 P.3d 663 (2003), the trial court correctly vacated a property settlement agreement under CR 60(b)(11) because the agreement constituted an unenforceable attempt to avoid child support and therefore was void as being against public policy. Id. at 811.

Feldmann failed to establish any change in the law, any circumstances beyond her control, or the existence of an unenforceable agreement. She merely

claims it is unjust to allow her unsecured creditors to keep money that she may have had a right to receive under the Homestead Act. Feldmann's argument ignores the fact that she had an adequate opportunity to raise this legal issue at the time of the creditors' motion. Feldmann received adequate notice of the motions to disburse, but chose not to employ an attorney and failed to respond to their motions. At the disbursement hearing, Feldmann was notified by the court that, if she had any objections, she must note a motion and give each of the creditors notice so that they could be present. Despite being so advised, she did not file for reconsideration or lodge an appeal. The trial court did not abuse its discretion in finding that Feldmann failed to establish a manifest injustice.

Additionally, Feldmann could have filed a motion to vacate based on excusable neglect under CR 60(b)(1) within the one-year time limit set out in that rule and failed to do so. Feldmann admits in her brief that she was made aware of her potential homestead rights in February of 2018, well before the one-year deadline. We have previously held it is inappropriate to allow a litigant to rely on CR 60(b)(11) as a way to circumvent the one-year time limit of CR 60(b)(1), as this "violat[es] the spirit of the rule." Tamosaitis v. Bechtel Nat., Inc., 182 Wn. App. 241, 254, 327 P.3d 1309 (2014).

We conclude the trial court did not abuse its discretion in denying the motion to vacate pursuant to CR 60(b)(11) because Feldmann failed to demonstrate a manifest injustice and could have brought her motion under CR 60(b)(1).

B.    Harvies' Request for Attorney Fee Award

The Harvies request an award of attorney fees on appeal pursuant to RAP 18.1 and the underlying judgment they obtained against Feldmann. We decline to make such an award here.

In Washington, courts will award attorney fees to a prevailing party if allowed by a contract, statute, or recognized ground in principles of equity. Bowles v. Washington Dep't of Ret. Sys., 121 Wn.2d 52, 70, 847 P.2d 440 (1993); RAP 18.1(a). The Harvies argue that their May 6, 2011 judgment against Feldmann entitles them to collect "attorney fees and costs incurred in collection" of that judgment. The judgment, however, indicates the trial court awarded attorney's fees under RCW 4.24.510. RCW 4.24.510 provides:

> A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency . . . regarding any matter reasonably of concern to that agency . . . . A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense  . . . .

(Emphasis added). The statute specifically authorizes an award of attorney fees incurred in establishing the statutory immunity defense. It does not authorize an award of attorney fees incurred in proceedings to collect a judgment long after the statutory immunity defense was established.

The Harvies alternatively maintain that we should award attorney fees because Feldmann's appeal is frivolous. An appeal is frivolous, and attorney fees are warranted, "if the appellate court is convinced that the appeal presents no debatable issues upon which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." In re Marriage of Foley, 84 Wn. App.

839, 847, 930 P.2d 929 (1997). An appeal is not frivolous if it raises issues which are meritorious or involved debatable issues upon which reasonable minds might differ. Olsen Media v. Energy Sci., Inc., 32 Wn. App. 579, 588, 648 P.2d 493 (1982). This court considers the record as a whole and resolves all doubts against finding an appeal frivolous. Delany v. Canning, 84 Wn. App. 498, 510, 929 P.2d 475 (1997).

Although Feldmann has not prevailed in this appeal, it was not frivolous. The issues Feldmann raised involved debatable issues on which reasonable minds might differ. We therefore deny the Harvies' request for attorney fees.

Affirmed.

_Andrus, A.C.J._

WE CONCUR:

_Appelwick, J._