IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In the Matter of the Marriage of: )
)　　No. 40030-1-III
DAVID ERIC GIDEON, )
)
　　　　　　　　Respondent, )
)　　UNPUBLISHED OPINION
　　and )
)
BRENDA ELAINE GIDEON, )
)
　　　　　　　　Appellant. )

FEARING, J. — In 2023, the dissolution court denied Brenda Gideon's motion to vacate a 2022 marital dissolution decree that incorporated the property settlement agreement reached between her and her former husband, David. On appeal, Brenda contends the dissolution court, when entering the 2022 dissolution decree, failed to fulfill its duty under RCW 26.09.080 to assess the full extent and value of the parties' property. Brenda also asserts that the dissolution court, in 2023, abused its discretion when denying her motion to vacate the 2022 decree because of David's misrepresentations and non-disclosures leading to the signing of the 2022 agreement. Because Brenda Gideon may not directly attack the 2023 dissolution decree in a motion to vacate, absent a showing of misrepresentation, and because the dissolution court did not abuse its discretion when finding no misrepresentation or concealment, we affirm.

FACTS

Appellant Brenda Gideon seeks to vacate a marital dissolution decree that adopted a property settlement agreement entered by her and her ex-husband, David Gideon. Before narrating the events leading to the signing of the agreement, we outline the parties' relationship. We take our facts from starkly differing declarations of Brenda and David Gideon.

Brenda and David Gideon married on May 20, 1995, in Seattle. The couple begat one child in 2002. They divorced in May 2022, when Brenda was 61 years old and David was 57 years of age.

David testifies that the couple purchased their first home in March 1995, two months before the marriage. David had worked for Boeing already for seven years. He supplied eighty percentage of the down payment for the home. During the marriage, Brenda Gideon labored as a nurse, and David worked for Boeing as a chemical engineer.

Brenda Gideon testifies that David controlled her and the activities of the family. According to Brenda, after the birth of their daughter, David's controlling mutated to verbal, emotional, and physical abuse. After instances of abuse, David apologized and purchased Brenda extravagant gifts. David precluded Brenda from financial decisions and access to financial records. According to Brenda, David physically struck their daughter.

David Gideon labels much of Brenda's testimony as "absurd," "outlandish," and "hilarious." He denies ever having been abusive to Brenda. David also denies ever engaging in violence toward the daughter or Brenda.

According to David, he never controlled or structured Brenda's life. Brenda, a strong and independent woman, guided family affairs. The two maintained separate bank accounts. Brenda's earnings went into her bank account, to which she always had access. David encouraged and prompted Brenda to begin a 401k account. Brenda periodically met with her financial advisor in Seattle and her father's financial advisor in the Tri-Cities. According to David, Brenda operated her own vehicle and moved about town at her fancy. Her family visited her as she desired and she frequently visited her family in the Tri-Cities and Salem, Oregon. Brenda enjoyed frequent evening outings with female nurses, with whom she worked. David cared for the family finances because Brenda lacked interest. David answered whatever questions Brenda posed regarding the family finances.

In 2019, health care providers diagnosed Brenda Gideon with malignant peritoneal mesothelioma, an aggressive cancer that affects the membrane protecting several of the body's most critical organs. One physician advised that Brenda would die in six months. Brenda has since suffered severe physical and emotional symptoms from the cancer, although the parties dispute the extent of the suffering today. Brenda has undergone

chemotherapy, surgeries, and rehabilitation. Brenda ceased employment with news of the cancer.

According to Brenda Gideon, the couple's daughter assumed household chores because of Brenda's disability. Abuse from David continued. He began on-line dating with other women.

According to David Gideon, he diligently cared for Brenda during the height of her cancer and a surgery in February 2019. He performed household chores, such as cooking dinner, walking the dogs, grocery shopping, and caring for the daughter. David complains that no one from Brenda's family assisted in her care and did not even visit her in the hospital, except her father once. David insists that the cancer ended in 2019.

The couple's daughter signed a declaration that disputed some of the testimony of her father. The daughter agrees that David performed some of the daily tasks while Brenda convalesced. Nevertheless, the daughter insists she performed most of the tasks, including laundry and washing dishes. The daughter maintained the nasogastric tube during the time that Brenda needed supplemental nutrients. According to the daughter, she provided the emotional support for her mother, during her recovery from surgery, because David grew distant during the time of convalescence.

According to David, he retired from Boeing in June 2020 due to the stress caused by long hours at work and his diligent care for Brenda because of her illness. According

to Brenda, David retired because of massive layoffs at Boeing and employee payouts offered by the manufacturer. In 2021, David and Brenda began discussing separating.

On January 11, 2022, the parties signed a one-page, handwritten property settlement agreement. Under the agreement, David would pay Brenda $250,000 immediately and $100,000 per year for four years thereafter, a total of $650,000. The $650,000 represented one-half of the equity in the parties' Des Moines residence. The agreement awarded David sole ownership of the home. The agreement allocated to Brenda her Nissan Rogue and to David his Nissan Frontier and Altima. Each spouse received his or her investments, bank accounts, and pensions. Finally, the property agreement granted Brenda the first $200,000 of recovery in a medical negligence claim she filed, the next $300,000 to David, and the remainder of $300,000 to Brenda. The agreement did not list the discrete investments, accounts, or pensions held by the parties or assign any value to these assets.

David Gideon emphasizes that the car assigned him is an older vehicle than Brenda's vehicle. David has a 2006 Nissan Frontier. Brenda has a 2016 Nissan Rogue. David insists he purchased many of his investments before the marriage. David believes that, because of major repairs and replacements needed in the Edmonds home, the home's value falls below $1,100,000.

According to Brenda, David dictated the terms of the property settlement agreement. David took advantage of her poor health, ignorance of the couple's wealth,

5

and lack of access to money. She characterizes herself as signing under "extreme distress." Clerk's Paper (CP) at 20. David pleaded with her then not to retain an attorney. Brenda avows that she still does not know the value of David's pension, investments, and 401k account.

David Gideon testifies that Brenda and he discussed the terms of the settlement agreement before their signing. The couple's daughter assisted the two reaching a resolution. Brenda knew the details of the parties' finances then. According to David, Brenda has never suffered financial duress in her entire life in part because of a wealthy father who, in 2022, owned five properties and maintained significant savings.

On January 31, 2022, David Gideon filed a petition for marital dissolution. The parties employed a joint attorney to handle the dissolution action, who advised to file the action in Lincoln County. Brenda contends that, because of a lack of funds, she did not contest what she labels "David's pleadings." She did not understand the pleadings.

On February 19, 2022, David transferred an additional $351,000 to Brenda beyond the terms of the settlement agreement.

Thus, David criticizes Brenda for asserting she lacked money for legal counsel. Brenda used some of the $351,000 to remodel an Airbnb in Kellogg, Idaho. During this time, Brenda also garnered $30,000 as part of the tort settlement.

In March 2022, Brenda Gideon moved to a condominium in Des Moines. According to Brenda, she moved from the family home in order to escape abuse from

David. She borrowed $60,000 from her father, withdrew $40,000 from a 401k account, and $12,000 from a 403b account to purchase a condominium in which she now lives. She also borrowed $100,000 from a mortgage lender. Brenda avers that she then lacked knowledge of family funds, which David controlled. According to Brenda, she also lacked money to then hire an attorney to assist her.

David Gideon suggests that Brenda paints herself as "nearly homeless in 2022," and he ridicules this depiction. CP at 46. According to David, Brenda now lives in a two-bedroom Des Moines condominium with a view of the Puget Sound. She enjoys a private parking spot in a secured building. The community, in which Brenda lives, maintains a shared swimming pool. A marina and beach park sit one block away. David speculates that, because of a purchase price of $550,000, Brenda may now own the home without a mortgage.

On May 2, 2022, the dissolution court signed findings of fact, conclusions of law, and a divorce decree prepared by David. The divorce decree incorporated the settlement agreement. The findings of fact and conclusions of law of law entered by the court included:

> **7. Separation Contract**
> The parties signed a written agreement on 1/11/2022.
> **Conclusion:** The written agreement should be enforced to the extent that it is consistent with the Final Order in this case. The written agreement is incorporated by reference but is not attached or filed herein.
> **8. Real Property**

The spouses' real property is listed in Exhibit A, which is attached to the Final Order and incorporated by reference

**Conclusion:** The division of real property described in the Final Order is fair, just and equitable.

**9. Community Personal Property**

Other: The spouses' community personal property is listed in Exhibit A, which is attached to the Final Order and incorporated by reference.

**Conclusion:** The division of community personal property described in the Final Order is fair, just and equitable.

**10. Separate Personal Property**

Other: The spouses' separate personal property is listed in Exhibit A, which is attached to the Final Order and incorporated by reference.

**Conclusion:** The division of separate personal property described in the Final Order is fair, just and equitable.

CP at 6. Exhibit A to the dissolution decree listed the parties' property:

**EXHIBIT A – ASSETS**

**The following assets shall be awarded to Petitioner:**
A. Unless otherwise specified herein or in the parties' written agreement,
    1) All assets owned by Petitioner before the date of marriage,
    2) All assets acquired by Petitioner after the financial separation date – 5/20/1995,
    3) All accounts and assets in Petitioner's name,
    4) All vehicles in Petitioner's name,
    5) All of Petitioner's employment-related and retirement-related benefits,
    6) All assets currently in the possession of Petitioner;

**The following assets shall be awarded to Respondent:**
A. Unless otherwise specified herein or in the parties' written agreement,
    1) All assets owned by Petitioner before the date of marriage,
    2) All assets acquired by Petitioner after the financial separation date – 5/20/1995,
    3) All accounts and assets in Petitioner's name,
    4) All vehicles in Petitioner's name,
    5) All of Petitioner's employment-related and retirement-related benefits,
    6) All assets currently in the possession of Petitioner.

CP at 14.  Exhibit A also awarded sole ownership of the family home in Edmonds to David Gideon and assigned him the mortgage debt on the residence.  The findings of fact and conclusions of law did not list any value for any of the assets or the amount of any liabilities.  The decree adjudged the division of property as just and equitable.

According to Brenda Gideon, she continues to suffer from her cancer, although she lives independently.  She visits an oncologist every three months.  She struggles to perform basic chores.  She takes anti-depressants, thyroid mediation, neuropathy medication, folic acid, and vitamin B12.

David Gideon testifies that, other than routine nausea, Brenda's health continues to improve.  She has experienced an unlikely and amazing recovery.  Brenda takes classes to regain her nursing license.

According to David Gideon, he receives no monthly income other than interest on savings.  CP 46.  Brenda, however, garners $2,337 per month for disability and Social Security, $349 per month through her workplace health insurance, and $1,900 per month from a pension.

In November 2022, Brenda Gideon retained the services of a lawyer.  On May 8, 2023, David sent Brenda an additional $28,000 beyond the payments demanded under the settlement agreement.

PROCEDURE

On May 2, 2022, Brenda Gideon filed a motion, under CR 60(b)(9) and (11), to vacate the dissolution decree. She argued that her state of mind, impaired by cancer, affected her ability to understand the separation agreement later incorporated into the divorce decree. She asserted that David pressured her to agree to an uncontested divorce without legal representation. Brenda also alleged that David concealed financial information from both her and the court. Although she did not explicitly cite CR 60(b)(4) as a basis for relief, her narrative centered on allegations of fraud and misrepresentation.

The dissolution court denied Brenda Gideon's motion to vacate. Although Brenda cited only subsections (9) and (11) of CR 60 in her pleadings, the court found no evidence of fraud or misrepresentation under subsection (4) of the rule.

LAW AND ANALYSIS

In assigning error to the dissolution court's denial of her motion to vacate, Brenda Gideon forwards two principal arguments. First, the trial court failed to properly discharge its statutory duty under RCW 26.09.080, when entering the May 2022 decree. Relatedly, David's misrepresentations and nondisclosures deprived the court of necessary information to fairly allocate the property. Second, the trial court employed an incorrect legal standard when denying the motion to vacate. On appeal, Brenda abandons her argument under CR 60(b)(9) and relies only on subsections (4) and (11) as grounds for vacation.

We conclude that any error in the trial court's failure to properly assess the extent and value of the couple's property at the time of entering the marital dissolution decree brings no benefit to Brenda. This error constituted legal error. The remedy for legal error is a timely appeal, not a motion to vacate. We further conclude that evidence supports the trial court's finding that David did not impose fraud on Brenda. We must defer to this factual finding of the dissolution court. Therefore, a motion to vacate under CR 60(b)(4) fails. Finally, we rule that Brenda fails to show a basis for vacation under CR 60(b)(11).

## RCW 26.09.080

We first discuss RCW 26.09.080, which governs the allocation of property during a marital dissolution. The statute reads, in relevant part:

> In a proceeding for dissolution of the marriage . . ., the court shall, without regard to misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and
> (4) The economic circumstances of each spouse or domestic partner
> at the time the division of property is to become effective.

Based on a reading of RCW 26.09.080, a settlement agreement or decree of dissolution must adequately identify the assets so as to permit the court to approve the agreement or make proper division. *Yeats v. Yeats' Estate*, 90 Wn.2d 201, 206, 580 P.2d

617 (1978). At minimum, the documents must put the parties and the court upon notice that the assets exist. *Yeats v. Yeats' Estate*, 90 Wn.2d 201, 206 (1978).

Brenda Gideon agreed to the dissolution decree entered by the superior court. She thereby waived any challenge to the dissolution court's failure to review all of the statutory factors. The invited error doctrine precludes a party from seeking appellate review of an error she helped create. *State v. Mercado*, 181 Wn. App. 624, 629-30, 326 P.3d 154 (2014). Brenda argues that fraud and concealment induced her to enter the agreement. To be invited, the error must be the result of an affirmative, knowing, and voluntary act. *State v. Mercado*, 181 Wn. App. 624, 630 (2014). We address this separate argument below.

## CR 60(b)(4)

CR 60(b)(4) declares:

> (b) On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
> . . . .
> (4) Fraud (whether heretofore denominate intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

To succeed under CR 60(b)(4), the moving party must establish by clear and convincing evidence that the fraudulent conduct or misrepresentation caused the entry of the judgment such that the losing party could not fully and fairly present his or her case or defense. *In re Marriage of Bresnahan*, 21 Wn. App. 2d 385, 405, 505 P.3d 1218 (2022).

Clear and convincing evidence requires a showing that a fact is "highly probable." *In re Vulnerable Adult Petition for Winter*, 12 Wn. App. 2d 815, 830, 460 P.3d 667 (2020). We review a trial court's decision under CR 60(b)(4) for abuse of discretion. *Haller v. Wallis*, 89 Wn.2d 539, 546, 573 P.2d 1302 (1978). A court abuses discretion when issuing a legally untenable or manifestly unreasonable decision. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Brenda Gideon contends that David Gideon (1) coerced her into signing the settlement agreement, (2) pressured her into agreeing to an uncontested dissolution, (3) withheld information about their marital assets, and (4) misled the court regarding his finances. In so arguing, Brenda relies only on her own declaration. A "mere self-serving declaration" by a spouse is insufficient to meet the clear and convincing evidence standard. *In re Marriage of Schwartz*, 192 Wn. App. 180, 368 P.3d 173 (2016). We would prefer that settlement agreements separately list each asset and its value. Nevertheless, Brenda fails to identify any asset that David hid from her. She does not suggest how a fair settlement would have differed from the one entered.

In his declaration, David Gideon refuted allegations forwarded by Brenda Gideon. His testimony supports a finding of a fair settlement. His testimony could cause one to question Brenda's credibility when claiming she lacked funds to hire a separate attorney.

When a trial court faces competing declarations by the parties, the court does not abuse its discretion when ruling in one party's favor based on the evidence. *In re*

13

*Marriage of Littlefield*, 133 Wn.2d 39, 47 (1997). Thus, the dissolution court did not

abuse its discretion when denying the motion to vacate.

Brenda Gideon principally relies on *Seals v. Seals*, 22 Wn. App. 652, 590 P.2d

1301 (1979). After the entry of a dissolution decree, wife Doris Seals brought a partition

action to divide property that husband Max Seals concealed during the dissolution

proceeding. Max responded by blaming Doris for her lack of knowledge. According to

Max, Doris should have resorted to subpoenaing records in order to discover the

existence of the assets he concealed. Max failed to note that he denied the existence of

the assets in an interrogatory answer. The trial court found that Max willfully and

fraudulently hid the existence of two bank accounts and stock in two corporations. The

trial court awarded Doris a one-half interest in all of the assets.

The dissolution court's lack of a finding of fraud on the part of David Gideon

readily distinguishes this appeal from *Seals v. Seals*. Also, Brenda Gideon seeks to

vacate the dissolution decree, whereas Doris Seals only wanted a half interest in hidden

assets. Brenda identifies no assets hidden from her by David.

CR 60(b)(11)

Brenda Gideon also relies on CR 60(b)(11) to vacate the dissolution decree.

CR 60(b)(11) states:

> (b) On motion and upon such terms as are just, the court may relieve
> a party . . . from a final judgment, order, or proceeding for the following
> reasons:

. . . .

(11) Any other reason justifying relief from the operation of the judgment.

Subsection (11) does not extend to errors in law. *In re Marriage of Thurston*, 92 Wn. App. 494, 499, 963 P.2d 947 (1998). This subsection's catchall provision seeks to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies. *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 478, 491 P.3d 1012 (2021).

CR 60(b)(11) does not aid Brenda Gideon for several reasons. Brenda Gideon reargues that David failed to disclose all of his assets and the dissolution court shunned its statutory duties under RCW 26.09.080 when entering the dissolution decree without adequate information about the value of the parties' assets and liabilities, the extent of the community property, and the extent of the separate property. To the extent that Brenda complains about David's fraud, CR 60(b)(4), not (11), covers the argument. To the extent Brenda criticizes the dissolution court's failure to fully review the property settlement when entering the decree, she assigns legal error not redressable. In short, the appeal's circumstances do not present an extreme, unexpected situation.

## Reasonable Attorney Fees

Brenda Gideon seeks recovery from David for the reasonable attorney fees and costs she incurred in this appeal. She cites RAP 14.2 and RCW 26.09.140. We deny the request because Brenda has not filed an affidavit of financial need. A failure to submit an affidavit demonstrating a financial need and the opposing party's ability to pay precludes

15

an ex-spouse from an award of costs and attorney fees under RCW 26.09.140. *In re Marriage of Oblizalo*, 54 Wn. App. 800, 806, 776 P.2d 166 (1989); *In re Marriage of Coons*, 53 Wn. App. 721, 770 P.2d 653 (1989); *In re Marriage of Ochsner*, 47 Wn. App. 520, 529, 736 P.2d 292 (1987). We do not address whether we would have awarded fees if Brenda had filed an affidavit.

CONCLUSION

We affirm the dissolution court's denial of Brenda Gideon's motion to vacate the dissolution decree and its property allocation. We deny Brenda reasonable attorney fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Cooney, J.

Staab, A.C.J.