[No. 42168-9-I.  Division One.  November 22, 1999.]

*In the Matter of the Marriage of* KEVIN WESLEY THOMPSON, *Respondent*, and GINA DIANE THOMPSON, *Appellant*.

---

874

*William R. Bishin* of *William R. Bishin, Inc., P.S.*; and *Edward R. Skone* of *Kinzel, Allen, Skone & Searing, P.S.*, for appellant.

*Camden M. Hall* and *David Utevsky* of *Foster Pepper & Shefelman, P.L.L.C.*, for respondent.

BECKER, J. — The parties asked the trial court to enforce the property distribution provisions of a dissolution decree. The court's enforcement order reduced the wife's award to less than originally decreed. Because the trial court lacked authority to modify the decree, its order must be reversed.

## ORIGINAL DECREE

Gina and Kevin Thompson separated on January 1, 1996. Their dissolution action was tried in July, 1997. The court entered a decree of dissolution on October 14, 1997. Neither Gina nor Kevin appealed from the decree but they were unable to agree on how to put the property distribution plan into effect. By cross motions, each of them asked the trial court to enforce the decree. The trial court ruled in favor of Kevin in January, 1998. Gina has appealed from that order.

To put the present dispute in context, it is necessary to describe pertinent provisions of the original decree and the findings and conclusions that accompanied it. The court decided to divide the community property equally. The largest community asset was the home. The court found the net equity in the home to be $79,784 after deducting from its market value the balance due on the mortgage and a line of credit. Another community asset was a joint securities account valued at $7,442. The total value of community assets, including some other undisputed items, was $97,919.

The decree awarded Kevin the home and the rest of the community assets, except for the joint securities account. The trial court awarded this account to Gina. To equalize the division of the community property, the court stated in its conclusions of law that Kevin should give Gina a note, secured by the home, for $41,518 ($97,919 divided by two equals $48,959.50. Gina's share of $48,959.50 minus $7,442 equals $41,518).

A second securities account was a matter in dispute. Although it was in Kevin's name, the court found it was Gina's separate property. Its assets had been placed with Kevin for management (Kevin is a stockbroker) rather than being transferred to him or to the community. The court awarded this account to Gina and its findings stated that Kevin should transfer the account to Gina "within five working days of the entry of the decree." An adjustment was necessary because Kevin had withdrawn $12,305 from this account for his own purposes after he and Gina separated. Kevin was to reimburse Gina for his withdrawals by adding the amount to the property equalization note.

First, however, the court gave Kevin credit for $6,251. That sum represented Gina's share of mortgage payments made by Kevin between the date of separation and the date of trial. The court subtracted Kevin's mortgage payment credit of $6,251 from the amount of his withdrawals from Gina's separate securities account, leaving a balance of $6,054 owed to Gina. ($12,305 minus $6,251 equals $6,054.) This $6,054 was added to the property equalization note, so that the decree ordered Kevin to give Gina a note for $47,572. ($41,518 plus $6,054 equals $47,572.) The decree thus awarded Gina the community account, valued at $7,442; a note for $47,572 to equalize the community property distribution and reimburse Gina for Kevin's withdrawals from her separate account; and the balance of the separate account.

Kevin made plans to refinance the house and pay Gina from the proceeds. Instead of transferring the two accounts to Gina, Kevin gave her two checks: one for $7,442 (a check issued from the separate account), and one for $6,054. Kevin asserted that the payment of $6,054 both eliminated his obligation to give Gina's separate account back to her, and also reduced the equalization note from $47,572 (the amount specified in the decree) to $41,518. Kevin insisted that Gina provide written confirmation that her lien on the house would be fully satisfied by payment of $41,518.

Gina resisted this request. She filed a complaint to

enforce Kevin's obligation to transfer both accounts and give her a note for $47,572. Kevin responded with a counter motion to enforce the decree. He claimed that Gina had been intransigent by refusing to cooperate with the refinancing. He asked for sanctions.

The motions came before the same trial court without argument. On January 8, 1998, the court signed Kevin's proposed findings of fact and order requiring Gina to reduce her lien to $41,518. The order declared that Kevin, with his two payments, had satisfied in full the decree provision awarding the two accounts to Gina. The court interlineated, "it was not the accounts themselves but rather their value which the court intended to distribute." The order imposed sanctions of $2,000 against Gina.

## STANDARD OF REVIEW

■■ Kevin argues that the abuse of discretion standard applies because Gina's appeal is nothing more than an attempt to overturn the trial court's decision in distributing the property. It is true that an order distributing property is reviewed for an abuse of discretion. *In re Marriage of Kraft*, 119 Wn.2d 438, 450, 832 P.2d 871 (1992). But Gina does not challenge the characterization of the assets or the division of property. The issue she presents involves only the interpretation of the terms of the decree.

Kevin argues that a judge's order enforcing a decree should be reviewed for abuse of discretion because it is analogous to an order of contempt. *See State v. Caffrey*, 70 Wn.2d 120, 122, 422 P.2d 307 (1966) (contempt order reviewed for abuse of discretion). In both situations, he argues, the judge must determine whether a party has violated an order. Kevin does not cite authority in support of this analogy, and we do not see the two situations as comparable. The interpretation of a dissolution decree is a question of law. *Chavez v. Chavez*, 80 Wn. App. 432, 435, 909 P.2d 314, *review denied*, 129 Wn.2d 1016 (1996). Questions of law are subject to de novo review by the appellate court. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d

724, 730-31, 837 P.2d 1000 (1992). If a decree is ambiguous, the reviewing court seeks to ascertain the intention of the court that entered it by using the general rules of construction applicable to statutes and contracts. *See In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981); *Kruger v. Kruger*, 37 Wn. App. 329, 331, 679 P.2d 961 (1984).

■■ A trial court does not have the authority to modify even its own decree in the absence of conditions justifying the reopening of the judgment. RCW 26.09.170(1); *Kern v. Kern*, 28 Wn.2d 617, 619, 183 P.2d 811 (1947). An ambiguous decree may be clarified, but not modified. RCW 26.09.170(1); *In re Marriage of Greenlee*, 65 Wn. App. 703, 710, 829 P.2d 1120, *review denied*, 120 Wn.2d 1002 (1992). A decree is modified when rights given to one party are extended beyond the scope originally intended, or reduced. A clarification, on the other hand, is merely a definition of rights already given, spelling them out more completely if necessary. *Rivard v. Rivard*, 75 Wn.2d 415, 418, 451 P.2d 677 (1969).

## INTERPRETATION OF DECREE

Here, the disputed provisions of the decree are those awarding Gina a note and the two securities accounts:

3.3 PROPERTY TO BE AWARDED TO THE WIFE.

3.3.1 A note signed by the husband in the principal amount of $47,572, which note shall bear interest at 8% per year, and which note shall be due upon sale of the residence or 3 years from the date of this decree, whichever first occurs.

. . . .

3.3.2 Everen Securities account in the name of Kevin and Gina Thompson, no. BY3003660261

3.3.3 Everen Securities account in the name of Kevin Thompson, no. BY30-7386-0266.

In its postdecree enforcement order, the trial court construed provision 3.3.1 to mean that the total amount of Kevin's note to Gina should be $41,518 plus interest at 8 percent from October 15, 1997 to December 1, 1997. This was a modification of the decree. The original provision unambiguously awarded Gina a promissory note for $47,572 plus interest for up to three years. By reducing the amount to $41,518 and reducing the interest term to 45 days, the court exceeded its authority.

The trial court construed provisions 3.3.2 and 3.3.3 as designed to distribute the value of the accounts rather than the accounts themselves. The decree language awarded the account to Gina, but did not specify that they were to be transferred on a particular date. Because securities accounts can fluctuate in value from day to day, an award of a securities account is inherently ambiguous without a specific date.

As to the joint account, the record supports the trial court's construction that the intent of the decree was to distribute $7,442 to Gina rather than to transfer the account itself. The court used the value of $7,442 in calculating the total amount of community assets. By ordering that Kevin's payment of $7,442 satisfied the award of the joint account, the court did not reduce Gina's award but instead defined it as equivalent to the value used by the court in calculating total community assets.

The court also ordered that Kevin's payment of $6,054 satisfied the award of the separate securities account. This was a modification, because it gave Gina less value than she was entitled to under the decree. The court's original findings valued the separate account at $25,890 at the time of separation. Between separation and trial Kevin withdrew and spent more than $12,000 for his own purposes. What remained of the account, according to the court's unchallenged finding of October 14, 1997, was valued at $12,973 as of March 31,1997. Clearly, Kevin's check for $6,054 did not satisfy this award.

Kevin was supposed to pay Gina $6,054 to reimburse her

for the funds *he withdrew* from her separate account. The decree achieved that reimbursement by adding $6,054 to the community property equalization note, bringing its total to $47,572. By adding the reimbursement sum of $6,054 to the note, the court clearly did not intend to eliminate Gina's right to the funds *still remaining* in the separate account.

Kevin contends the shortage in his payments can be accounted for by other expenditures he made to reduce community debts. His explanation is inconsistent with the original decree. According to the findings and conclusions entered at the time, Kevin withdrew $13,610 from the community line of credit after the parties separated, but he spent $13,585 to reduce community debts. Because these amounts were roughly equal, the court offset one against the other. There was nothing left to offset against the value of the separate account, and indeed the trial court expressly concluded that Kevin's withdrawal from Gina's separate account "cannot be attributed to community expenses or debt, and should be repaid."

Kevin also contends it is not fair that he should have to pay Gina full value for her account because the decree requires him to pay off the entire line of credit secured by the residence. This argument is unsound as well as inconsistent with the trial court's conclusions and decree. The court deducted the line of credit debt from the value of the house before distributing the net equity in equal shares. Thus, Gina paid her share of the line of credit debt out of her share of the value of the house.

We conclude that the January 8, 1998 order must be reversed because it improperly reduced Gina's rights with respect to the equalization note and with respect to the award of her separate account.

## SANCTIONS ORDER

The trial court imposed sanctions of $2,000 against Gina after finding that her resistance to Kevin's refinancing plan

constituted intransigence. Gina has not been intransigent. She merely insists, and properly so, that she cannot be required to cooperate with a refinancing plan unless she is guaranteed to receive from the proceeds the full amount awarded by the decree. The sanctions order is reversed. Kevin's request for attorney fees on appeal is denied.

Gina requests attorney fees as a sanction for Kevin's intransigence in bringing these proceedings and delaying the implementation of the decree. We decline to make such an award de novo. In the circumstances of this case, Gina's request should first be directed to the trial court. If the trial court finds Gina's request for sanctions to be justified, the court may award sanctions for the proceedings on appeal as well as the postdecree proceedings below.

## CONCLUSION

Kevin's payment of $7,442 satisfied the original award of the joint securities account to Gina. Kevin's payment of $6,054 did not satisfy the original award of the separate securities account to Gina.

Kevin should have transferred the separate account to Gina, as contemplated by the finding, within five working days of the decree. The fair market value of the account within five days of entry of the decree is an adequate measure of the damage Gina incurred as a result of Kevin's failure to transfer the account. The trial court is directed to find that value and award it to Gina, plus interest. As to the equalization note, the provisions of the original decree must remain in force. The revised order should require Kevin to give Gina a note for $47,572, bearing interest from the date of the decree at 8 percent per year, secured by the residence, and due upon sale of the residence or three years from the date of the original decree, whichever occurs first. The revised order should also credit Kevin with his payment of $6,054.

Reversed and remanded for enforcement of the original decree consistent with this opinion. Gina's request for sanctions is reserved to the trial court upon remand.

WEBSTER, J., concurs.

APPELWICK, J. — (dissenting in part) I dissent in part, and write separately regarding the award of property. The original decree of October 14, 1997, awarded property to Gina Thompson as follows:

3.3 PROPERTY TO BE AWARDED TO THE WIFE.

3.3.1 A note signed by the husband in the principal amount of $47,572, which note shall bear interest at 8% per year, and which note shall be due upon sale of the residence or 3 years from the date of this decree, whichever first occurs

3.3.2 Everen Securities account in the name of Kevin and Gina Thompson, no. BY3003660261

3.3.3 Everen Securities account in the name of Kevin Thompson, no. BY30-7386-0266.

It is undisputed that Kevin Thompson did not execute the note as specified, nor did he transfer the accounts as specified. It is also undisputed that the subsequent proceeding resulting in the January 8, 1998 order was an enforcement action, not a modification.

The language of the decree was absolutely clear. There was no ambiguity for the trial court nor for this court to interpret or clarify.

Yet, the trial court effectively rewrote the decree in its January 8, 1998 order, when it had no authority to do so. It is of no consequence whether the trial court or this court believes that what Kevin did with the assets was "fair" as substitute performance. We cannot know whether Gina could have recreated the securities accounts with the money that Kevin gave her. Had prices changed? Were there fees? Besides, it was not for him to decide, nor for us to ratify. His duty was to follow the order.

The trial court must be reversed. The transfers must be undone, and Kevin must comply with the original decree.

Gina was entitled to the specific accounts and the securities in those accounts as of the date of entry of the decree. The account content must be recreated at Kevin's expense.

Whether the securities have increased or decreased in value is of no consequence. The risk of value fluctuation is inherent in such accounts. Gina is entitled to the number of shares or units of the type that were in the account as of the date of the decree, regardless of the cost to recreate the account. She is also entitled to all earnings, dividends, stock splits, or other benefits from those accounts which accrued or occurred postdecree.

Tax issues are likewise immaterial. To the extent that Kevin's postdecree handling of the accounts has created tax liabilities, he should be responsible for those taxes. Losses, gains and taxes not related to Kevin's postdecree handling of the accounts inhere to Gina as owner. This is implicit in the relief she requests.

I concur with the majority that Gina is entitled to a note for $47,572, bearing interest at 8 percent per year from the date of the decree, secured by the residence, and due upon sale of the residence or three years from the date of the original decree, whichever occurs first. Whether the trial court on remand will credit the payments Kevin has made against the note or have them refunded is an open question, and separate from Gina's entitlement to the securities accounts.

Fees awarded to Kevin should be vacated. Gina should be awarded fees for the enforcement proceeding, this appeal, and on remand.