**FILED**
**NOVEMBER 14, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 34831-8-III |
| | ) | |
| SAREENA MALHI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| ANDY K. R. PRASAD, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Andy Prasad appeals from contempt findings made by the Chelan

County Superior Court based on violations of the parenting plan governing the children

of his former marriage to respondent Sareena Malhi. We affirm.

## FACTS

The marriage of Dr. Prasad and Dr. Malhi, who were both physicians for the

military, was dissolved in Chelan County in 2015. A parenting plan was executed the

same year. Review of that plan provides some insight into the highly contentious

relationship of the couple. Dr. Malhi moved with her two sons, A.P. and V.P., to Davis, California in 2013, shortly after initiating dissolution proceedings in Washington. Davis is close to her current military assignment. In 2016, Dr. Prasad also moved to Davis.[1] The parenting plan, having contemplated a long-distance relationship, did not work smoothly with the reality of the parents living very close together.[2]

To the extent necessary, specific elements of the highly detailed parenting plan will be discussed in our analysis of the specific violations. In very brief summary, the couple's two children returned to Dr. Malhi, after a lengthy summer time visitation with their father, and began challenging the custody arrangement and residential schedule, topics both parents were prohibited from raising with the children. Dr. Malhi filed a motion for contempt, alleging 10 specific violations of the parenting plan.

After a hearing, the trial court found Dr. Prasad to have committed five violations of the parenting plan and determined that he was in contempt of court. Describing the father as obsessive and possibly delusional, the trial judge believed he would persist in trying to alienate the children from their mother. The court ordered Dr. Prasad to pay to

---

[1] According to the Brief of Appellant (at 12), the two residences are within one mile.

[2] For instance, the children were to have regular FaceTime or Skype contact with their father even though he now lived in the same city. When the children one day were unavailable at the prescheduled time due to a soccer game, the father reported the incident to the county sheriff.

Dr. Malhi a civil sanction of $2,500 ($500 per violation) and directed that Dr. Prasad

undergo a psychological examination within 60 days and refrain from requesting

additional visits with the children. At Dr. Prasad's request, the court also changed venue

to Yolo County California so that California courts would deal with requests to change

the parenting plan.

Dr. Prasad timely appealed to this court. A panel considered the matter without

argument.

## ANALYSIS

Dr. Prasad argues that the court erred in finding him in violation of the parenting

agreement and in imposing the $2,500 sanction, which he contends is punitive in nature.

We address those issues in the order listed.[3]

*Contempt Finding*

Dr. Prasad first argues that the trial court erred in determining he violated the

parenting plan in five different ways. Since the evidence supported the rulings, there was

no abuse of the trial court's discretion.

---

[3] Dr. Malhi, who is representing herself in this appeal, requests attorney fees. However, she is not an attorney and has not engaged an attorney, so she is not entitled to recover attorney fees since none were incurred. *In re Marriage of Brown*, 159 Wn. App. 931, 938-939, 247 P.3d 466 (2011). As the prevailing party, she is entitled to costs if she timely complies with RAP 14.4. RCW 26.09.160(2)(b)(ii).

Numerous standards guide review of this claim. Contempt of court is the intentional disobedience of a lawful court order. *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995) (citing RCW 7.21.010(1)). In the context of dissolution and parental support, contempt is governed by RCW 26.09.160.

RCW 26.09.160(1) provides in part:

> An attempt by a parent . . . to refuse to perform the duties provided in the parenting plan . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court.

The party moving for contempt has the burden of proving contempt by a preponderance of the evidence by providing evidence that the offending party "acted in bad faith or engaged in intentional misconduct or that prior sanctions have not secured compliance with the plan." *In re Marriage of James*, 79 Wn. App. 436, 442, 903 P.2d 470 (1995). A contempt ruling must be supported by a finding that a violation of a court order was intentional. *Holiday v. City of Moses Lake*, 157 Wn. App. 347, 355, 236 P.3d 981 (2010), *review denied*, 170 Wn.2d 1023 (2011).

Whether contempt is warranted in a particular case is within the sound discretion of the court. *In re Marriage of Thompson*, 97 Wn. App. 873, 877, 988 P.2d 499 (1999); *James*, 79 Wn. App. at 439-440. Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). This court does not weigh conflicting evidence or substitute our judgment for that of the trial court. *In re Marriage of Rich*, 80 Wn. App. 252, 259, 907

4

P.2d 1234 (1996). A trial court's challenged factual findings regarding contempt will be upheld on appeal if they are supported by substantial evidence. *In re Marriage of Rideout*, 150 Wn.2d 337, 350, 77 P.3d 1174 (2003). Substantial evidence is that sufficient to persuade a fair-minded, rational person of the truth of the evidence. *World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991). Because it is the role of the trial court, not the appellate court, to find facts, a reviewing court lacks the ability to find persuasive evidence that the trier of fact failed to find persuasive. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009).

The final observation is where we begin our analysis. Many of Dr. Prasad's arguments are based on his denial of doing anything wrong and citation to lack of any direct evidence in opposition. In a sufficiency of the evidence review, the opposing evidence is irrelevant because it was not accepted by the trier of fact and has no meaning for this court. In addition, Dr. Prasad's argument ignores the fact that circumstantial evidence is as good as direct evidence. *Rogers Potato Serv., LLC v. Countrywide Potato, LLC*, 152 Wn.2d 387, 391, 97 P.3d 745 (2004).

At issue are findings that Dr. Prasad violated paragraphs 4.1, 4.2 (twice), 6.1, 6.5, and 6.7 of the parenting plan. These provisions concern authority for day-to-day decision making (4.1) and major decision making (4.2), as well as restrictions on the parents disparaging the other in front of the children (6.1), promoting the children's affection for the other parent (6.5), and prohibiting discussion of residential arrangements with the

5

children (6.7). The trial court made detailed findings on these matters (as well as on the allegations that it found insufficient) by letter opinion that was incorporated into its judgment on the contempt claims.

Day-to-day decisions were left to the parent with whom the children were currently residing, but most major decisions were left to Dr. Malhi, although Dr. Prasad had limited ability to make recommendations concerning school placement and invasive medical treatment. With respect to the violation of paragraph 4.1, the trial court concluded that the evidence established that Dr. Prasad "sent an inordinate number of text and e-mail messages demanding information and criticizing the mother's day to day decisions regarding the children" in contravention of the mother's authority to make daily decisions without harassment by the father. Clerk's Papers (CP) at 174. The screen shots of text messages and e-mails in the trial record easily supported the trial court's factual finding, as well as its legal conclusion that this was contempt.

The same evidence also showed the father's excessive and "incessant communications with the mother about the children's health issues in contravention of the parenting plan." CP at 174. Paragraph 4.2 expressly stated that the father was not to question the mother about medical issues. The evidence again supported the trial court's factual determination that paragraph 4.2 intentionally was violated and that the father was in contempt of court.

6

Paragraph 6.1 prohibited either parent from disparaging the other in the presence of their children. Noting both the undisputed evidence about the father's report to law enforcement concerning the Skype visit that was missed due to a soccer game and the children's severe change in attitude toward their mother following a five week summer visit with their father, the trial court found:

> The father's communications to the mother are filled with self-serving—and possibly delusional—rantings about the safety of the children. Following a lengthy summer visit with the father, the children's behavior toward the mother declined markedly. The children have made statements strongly indicative of being coached by the father in a negative manner.

CP at 172. From the evidence, it appeared the father was trying to instill false memories of abuse by their mother. Despite the fact that the mother did not hear the father's words, this circumstantial evidence was more than sufficient to substantiate the trial judge's finding that the father had violated the anti-disparagement provision of paragraph 6.1.

The same evidence of disparagement and manipulation easily showed a violation of paragraph 6.5, the requirement that each parent work to further the children's affection for the other parent. The trial court's conclusion was soundly based on the evidence.

Finally, paragraph 6.7 of the parenting plan prohibited the parents from discussing the residential schedule with the children. The trial court found that the father had violated this provision. Immediately after the return from the summer visit with their father, the boys questioned their mother about the residential schedule. "When viewed in

conjunction with all of the father's conduct, the court finds that the father is the source of these questions and comments by the children. Thus, the father is in contempt in this regard." CP at 173. Again, we agree that the evidence permitted these determinations. While undoubtedly children are capable of complaining about their living situation without parental assistance, the record of this case easily supported the trial judge's determination that these complaints were instigated by Dr. Prasad. The father was engaged in a non-stop harassment of the mother and her parenting practices. It is understandable that he was considered the source of the children's statements, particularly in light of the evidence of his failure to foster affection for her.

In the big picture, the trial court was easily able to conclude from the evidence that the father continued to manipulate and attempt to control the mother, using the children to do so. The problem had existed at the time of the parenting plan, leading to the non-standard provisions found in paragraphs 6.1, 6.5, and 6.7. In view of his unrelenting behavior, it was an easy call for the trial court to find that he continued to attempt to poison his children against their mother.

The evidence supported each of the challenged findings, as well as the conclusion that the violations were intentional and contemptuous. Substantial evidence supported the trial court's rulings.

*Financial Sanction*

The father also challenges the court's imposition of $2,500 in sanction for his violation of the parenting provisions. He likens the fine to a punitive contempt sanction. Since the legislature has expressly authorized and mandated this sanction for violation of a parenting plan, his effort to equate the fine with punitive contempt necessarily fails.

As noted previously, RCW 26.09.160 governs the penalties for violating parenting plan provisions. Subsection 160(1) provides that the intentional failure to comply with the duties imposed by the parenting plan "shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court." The trial court here followed that formula in each of its five findings of contempt—the court found an intentional violation based on the evidence provided, resulting in a finding of contempt in each instance. The question presented concerns the remedy.

At issue is RCW 26.09.160(2)(b), (iii). It provides in part:

> If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, *has not complied with the order establishing residential provisions for the child*, the court shall find the parent in contempt of court. Upon a finding of contempt, the court shall order:
> . . . .
> (iii) The parent to pay, to the moving party, a civil penalty, not less than the sum of one hundred dollars.

(Emphasis added.)

Dr. Prasad argues that the italicized language of RCW 26.09.160(2)(b)(iii) is limited solely to violation of the residential provisions of the parenting plan. The case

9

law, however, has not applied that narrow interpretation. Subsection 160(2)(b) refers to "the *order* establishing residential provisions for the child." The *order* is the parenting plan or other equivalent ruling that contains residential provisions. This does not mean that the statute and the penalties for violations leading to contempt *only* applies to the residential provisions of a parenting plan. If the legislature intended that the statute applied only to the residential provisions of the parenting plan (or other equivalent order), it would have said so as it did in RCW 26.09.160(3).[4] Instead, it generically referred to the *order* that sets the residential provisions. On at least two occasions, this court has applied RCW 26.09.160(2)(b) to violations of the parenting plan that did not involve residential provisions.

The mandatory nature of contempt penalties was at issue in *In re Marriage of Eklund*, 143 Wn. App. 207, 211, 177 P.3d 189 (2008). There the father had, on multiple occasions, failed to follow the babysitting provisions of a parenting plan that had required the mother be given first opportunity to watch the child. Instead, the father had allowed his mother and girlfriend to watch his child without first offering the mother the option.

---

[4] The legislature in RCW 26.09.160(3) used explicit language focusing on the residential provisions when it set forth the standards for repeat violations of the residential provisions. That statute reads in relevant part: "On a second failure . . . to comply with a residential provision of a court-ordered parenting plan." RCW 26.09.160(3). The legislature knows how to distinguish between an order setting conditions and the conditions themselves.

10

This court reversed the trial court and remanded for imposition of the mandatory sanctions that followed from the violation of the provision.

This court faced the situation where a mother had enrolled her son at a religious daycare center in violation of the parenting plan's joint decision-making provision regarding education and religious upbringing. *In re Marriage of Davisson*, 131 Wn. App. 220, 223, 126 P.3d 76, *review denied*, 158 Wn.2d 1004 (2006). We affirmed the trial court's decision to hold the mother in contempt and impose the mandatory sanctions for violating the parenting plan.

In neither of these instances were the residential provisions themselves at issue, but provisions of the parenting plan—the order that sets residential provisions—were at issue. We believe the statute extends mandatory sanctions to all parenting plan violations, in contrast to violations of the dissolution decree, property settlement, temporary orders, or similar rulings. In those other instances, the trial court retains discretion under the contempt statute to fashion appropriate contempt orders. However, the ability to enforce compliance with the parenting plan itself would be severely limited if the trial court was simply limited to post-hoc criminal contempt sanctions sought by a busy county prosecutor's office.

We conclude that RCW 26.09.160(2)(b) applies to violations of all aspects of a parenting plan rather than merely provisions relating to the child's residential situation.

No. 34831-8-III
*Malhi v. Prasad*

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

12