# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 57344-0-II |
| LAURIE MARIE HELM, | |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| CLAYTON AUSTIN HELM, | |
| Appellant. | |

CHE, J. — Clayton Helm appeals the trial court's entry of a new Qualified Domestic Relations Order Military (2022 QDRO).

Clayton[1] is a retired member of the U.S. military. Clayton and Laurie Helm married on September 30, 2001. The marriage was dissolved on September 30, 2014. The decree of dissolution awarded Laurie half of the marital portion of Clayton's military pension.

In 2015, the trial court entered an agreed Military Retired Pay Division Order (2015 order) directing distribution of Clayton's disposable military retired pay. Clayton then retired from the military in 2019. In 2021, Defense Finance and Accounting Services (DFAS) determined the 2015 order did not support payments of Clayton's disposable military retired pay

---

[1] Because the parties share the same last name, we refer to the parties by their first names.

to Laurie. In 2022, Laurie moved under CR 60 for the trial court to enter a corrected order to resume her DFAS payments.

The trial court heard the motion and entered the 2022 QDRO, stating that it did not consider Laurie's motion to be brought under CR 60, but nevertheless proceeding on the belief that it had jurisdiction to modify the 2015 order.

Clayton argues that the trial court erred in considering Laurie's CR 60 motion. He asserts that the trial court further erred by modifying the 2015 order and entering the 2022 QDRO. And he contends that the 2022 QDRO incorrectly calculated his disposable military retired pay and the parties' marital share of that pay, among other things. Both Clayton and Laurie request attorney fees on appeal.

We hold that (1) the trial court did not abuse its discretion in considering Laurie's CR 60 motion, (2) the 2015 order was ambiguous, (3) the trial court modified the parties' rights under the 2015 order when it issued the 2022 QDRO, (4) the 2022 QDRO contains a scrivener's error regarding attorney fees, and (5) neither party is awarded attorney fees on appeal.

Because the 2015 order was ambiguous and the 2022 QDRO modified the parties' rights under the 2015 order, we reverse and remand. On remand, the trial court should reopen the property distribution solely to calculate the distribution of Clayton's disposable military retired pay. On remand, the trial court should also correct the scrivener's error in the 2022 QDRO regarding attorney fees. And we deny both requests for appellate attorney fees.

FACTS

Clayton is a retired member of the U.S. military.  Clayton and Laurie were married on September 30, 2001, and separated on July 17, 2012.  At the time of the parties' separation, Clayton held the paygrade of E-6[2] with 15.25 years of service, of which 4 years and 11 months were accrued before his marriage with Laurie.

I.  DISSOLUTION AND INITIAL ORDERS

Laurie filed for divorce on November 15, 2012.  Clayton was promoted to E-7 on June 1, 2013.  A Decree of Dissolution (dissolution decree) was entered on September 30, 2014.

A.     *Relevant Dissolution Decree Awards*

Exhibit W of the dissolution decree stated that the marriage was 151 months long.  It also provided that Laurie "shall receive half of the funds earned during the marriage in [Clayton's] pension through the [military]," and that Laurie will receive Clayton's military survivor benefits. Clerk's Papers (CP) at 66.

In Exhibit H of the dissolution decree, Clayton was awarded all remaining funds in his military pension, if any, after Laurie was "awarded her share."  CP at 64.

B.     *2015 Order*

In 2015, the trial court entered the 2015 order, agreed upon and signed by both parties, which set forth the provisions for the distribution of Clayton's military retired pay benefits.

---

[2] E-6 signifies a paygrade, which is an administrative classification used primarily to standardize compensation across the military services.  *U.S. Military Rank Insignia*, U.S. Dep't of Defense, http://www.defense.gov/Resources/Insignia/ (last visited July 25, 2024).

No. 57344-0-II

Regarding the calculation of Laurie's share of Clayton's military pension, the trial court found

> The marital portion of the uniformed services retired pay of [Clayton] (hereafter military pension or retired pay) is subject to marital property division. [Laurie] is entitled to a share of [Clayton's] military retirement benefits, as set out in the Decree. [Laurie's] entitlement to retired pay accrues upon the retirement of [Clayton]. The remaining portion of [Clayton's] military retired pay is the sole and separate property of [Clayton].
>
> [F]or the purposes of calculating the marital portion, the parties were married on September 30, 2001 and separated on September 30, 2014.

CP at 7. The trial court ordered the following calculation to be made to determine Laurie's share:

> The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50 [percent] times a fraction, the numerator of which is 151 months of marriage during the member's creditable military service, divided by the member's total number of months of creditable military service.

CP at 8.

Disposable military retired pay is a member's total monthly retired pay (gross pay) entitlement minus authorized deductions.[3] However, the 2015 order did not specify when the pension was to be divided in half nor the specific formula that should be used to calculate Clayton's disposable retired pay.

---

[3] *"Former Spouse Payments From Retired Pay" Summary of Major Changes*, U.S. Dep't of Defense, Volume 7B, Ch. 29, (2021), https://comptroller.defense.gov/Portals/45/documents/fmr/archive/07barch/07b_29_Jun21.pdf

Based on the above provisions, Laurie's share is calculated using the following formula:

50 percent x (151 months of marriage/Clayton's total months of creditable military service) x Disposable Retired Pay.[4]

*See* CP at 8.

In determining Clayton's "Disposable Retired Pay for the purpose of calculating the amount due to be paid to [Laurie]," the 2015 order specified that

> [Clayton] shall be deemed to have retired as an E7 Master Sergeant with 20 years of creditable military service (including any statutory increases in Disposable Retired Pay for a service member of that rank and number of years of service made between now and the date of his actual retirement, irrespective of his actual rank or years of creditable service at retirement).

CP at 8.

The parties further agreed that Laurie "shall be covered by the Survivor Benefit Plan . . . regardless of the remarriage of [Clayton]. [Laurie] shall receive Survivor Benefit Plan protections at the rate required to ensure the continuance of the amount to be received by [Laurie] from [Clayton's military] pension in the event of [Clayton's] death, not to exceed the maximum annuity allowed by law under the Survivor Benefit Plan." CP at 8. Lastly, the 2015 order stated

> (9) This court reserves jurisdiction to amend or modify the provisions of this order in light of comments received from (a) the Designated Agent, (b) another court of competent jurisdiction, or (c) any other organization or party, during the process of deciding whether this order will be accepted and honored by the Designated Agent.

> (10) This court also reserves jurisdiction to amend, modify, or terminate the provisions of this order, even after it has been accepted or approved by the Designated Agent.

CP at 9-10.

---

[4] The "/" in the formula signifies a fraction.

## II. CR 60 PROCEEDINGS

On December 31, 2019, Clayton retired from the military with a total of 273 months of service. Laurie then began receiving a portion of Clayton's retirement benefits from DFAS. Clayton disagreed with DFAS's payment amount to Laurie and submitted a claim to DFAS, which caused DFAS to conduct an audit.

In April 2021, DFAS notified Laurie that "the award language in the [2015 order] . . . is insufficient to support a COMMUNITY PROPERTY award . . . We have terminated the community property award and an audit will be performed."[5] CP at 129.

On July 8, 2022, Laurie filed a CR 60 motion to correct a scrivener's error and enter a new qualified domestic relations order. Laurie sent a setting order for the motion hearing to Clayton. In her motion, she appeared to argue that the 2015 order did not meet DFAS's current requirements for military retirement orders and needed to be updated in order for DFAS to resume its payments to her. On August 5, Clayton filed his response to Laurie's motion. The record contains a CR 2A agreement dated August 5, which is signed by both parties and provides for electronic service of documents.

At the motion hearing, Clayton moved to deny Laurie's CR 60 motion on the basis that she had not complied with the procedural requirements of CR 60(e). The trial court stated it did not consider Laurie's motion as a CR 60 motion but proceeded on the basis that in the 2015 order, the court reserved jurisdiction to amend or modify the 2015 order provisions.

---

[5] In January 2022, DFAS notified Laurie she received $9,683.42 in overpayments for the period of March 1, 2020, through March 31, 2021, and Laurie repaid it in full.

The trial court entered the 2022 QDRO with written findings and conclusions that stated the 2022 QDRO "shall modify the order signed on January 13, 2015 pro tunc." CP at 270. In regard to the calculation of Laurie's share of Clayton's military pension, the 2022 QDRO awarded Laurie, "27.6557 [percent] of the disposable military retired pay [Clayton] would have received had [he] retired with a retired pay base (High-3)[6] of $4,586.10 and with 22 years and 9 months of creditable service on December 31, 2019." CP at 266. The 2022 QDRO also required Laurie to reimburse Clayton 72.335 percent of the survivor benefit plan premium each year.[7] Additionally, the 2022 QDRO appears to order Clayton to pay attorney fees to Laurie while also ordering he "should not have to pay court costs, lawyer fees, and other reasonable costs because [ ]: the court does not believe either party acted in bad faith." CP at 259.

Clayton appeals.

## ANALYSIS

### I. APPROPRIATENESS OF ADDRESSING THE CR 60 MOTION

Clayton argues the trial court erred by considering Laurie's CR 60 motion to vacate the 2015 order because Laurie did not identify any clerical mistake, the motion was not made within a reasonable time, and Laurie failed to obtain and serve an order to show cause. Clayton further asserts that the 2015 order's "reservation of jurisdiction" does not give the trial court unlimited

---

[6] The High-3 is a method for determining the retired pay base and is the average of the highest 36 months of basic pay.

[7] Laurie argues the court erred in exceeding the scope of clarification by ordering Laurie to pay 100 percent of the Survivor Benefit Plan. Laurie did not cross appeal this matter. Thus, we do not address her argument. *See Freedom Found. v. Dep't of Soc. & Health Servs.*, 9 Wn. App. 2d 654, 663 n.2, 445 P.3d 971 (2019) (A cross appeal is required if the respondent is seeking affirmative relief rather than urging additional grounds for affirming the trial court).

ability to change the substance of a court's order without first satisfying RCW 26.09.170.  Br. of

Appellant at 47.  Clayton's arguments fail.

A.      *Legal Principles*

We review a decision under CR 60(b) for an abuse of discretion.  *Barr v. MacGugan*, 119

Wn. App. 43, 46, 78 P.3d 660 (2003).  A trial court abuses its discretion when it bases its

decision on untenable grounds or makes its decision for untenable reasons.  *Shandola v. Henry*,

198 Wn. App. 889, 897, 396 P.3d 395 (2017).

Clerical mistakes present in judgments, orders, or other parts of the record may be

corrected by the court at any time and, on motion, the court may relieve a party from a final

judgment or order on the basis of mistakes, inadvertence, excusable neglect, newly discovered

evidence, fraud, or "[a]ny other reason justifying relief from the operation of the judgment."  CR

60(a), (b)(11).  Furthermore, CR 60 "does not limit the power of a court to entertain an

independent action to relieve a party from a judgment, order, or proceeding."  CR 60(c).

Unlike motions brought under CR 60(b)(1)-(3), which must be made within one year

after a court enters its judgment or order, a CR 60(b)(11) motion must be brought within a

"reasonable time."  *In re Marriage of Thurston*, 92 Wn. App. 494, 499-500, 963 P.2d 947

(1998); *see also* CR 60(b)(11).  What constitutes a reasonable time depends on the facts of the

case.  *Thurston*, 92 Wn. App. at 500.  "The mere passage of time between the entry of the

judgment and the motion to set it aside is not controlling."  *Thurston*, 92 Wn. App. at 500.

Rather, a "triggering event for the motion may arise well after entry of the judgment that the

moving party seeks to vacate."  *Thurston*, 92 Wn. App. at 500.  In determining timeliness, courts

may consider whether "the nonmoving party is prejudiced by the delay and whether the moving party has a good reason for failing to take action sooner." *Thurston*, 92 Wn. App. at 500.

B.      *The Trial Court Did Not Abuse Its Discretion When It Considered Laurie's CR 60 Motion*

Laurie's motion was based on CR 60(a), CR 60(b)(11), and CR 60(c).[8]

Here, years after the trial court entered the 2015 order, Clayton submitted a claim to DFAS objecting to the amount DFAS was sending to Laurie. As a result, DFAS determined the 2015 order insufficient to support payments to Laurie. This was the triggering event for Laurie's motion. Because of DFAS's determination, the trial court had to issue a new order to implement the terms of the original dissolution decree. And Clayton appears to concede that changes to the 2015 order were required for DFAS to resume distribution of payments established by the decree. Therefore, Laurie had a good reason for not taking action sooner as there was no need for her motion prior to DFAS's determination. Moreover, Clayton does not show how the delay prejudiced him. Thus, under these facts, we conclude that Laurie's motion was brought within a reasonable time.

Clayton also argues that Laurie failed to obtain and serve a show cause order. CR 60(e)(3) requires, in pertinent part, service of the motion, an affidavit, and order to show cause upon all parties as in the case of summons in a civil action at such time before the date fixed for the hearing. On July 8, Laurie filed her CR 60 motion and sent a setting order for the motion hearing to Clayton. On August 5, Clayton filed his response to Laurie's motion. Further, the

---

[8] The trial court stated it did not consider Laurie's motion as a CR 60 motion and proceeded on the basis that the court reserved jurisdiction to amend or modify the 2015 order provisions. The trial court did not state what it considered Laurie's motion as. Nonetheless, Laurie's motion was properly brought under CR 60.

record contains a CR 2A agreement dated August 5, which is signed by both parties and provides for electronic service of documents. Thus, Laurie did obtain a show cause order and it appears Laurie served notice of the motion to Clayton according to their agreement and the requirements of CR 60.

Therefore, the trial court did not abuse its discretion when it considered Laurie's CR 60 motion.

## II. QUALIFIED DOMESTIC RELATIONS ORDERS

The 2015 order provided the following calculation to determine Laurie's share of Clayton's military pension:

> The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50 [percent] times a fraction, the numerator of which is 151 months of marriage during the member's creditable military service, divided by the member's total number of months of creditable military service.

CP at 8.

However, the 2015 order did not specify when the pension was to be divided in half nor the specific formula that should be used to calculate Clayton's disposable retired pay. The 2015 order also specified that, in determining Clayton's disposable retired pay,

> [Clayton] shall be deemed to have retired as an E7 Master Sergeant with 20 years of creditable military service (including any statutory increases in Disposable Retired Pay for a service member of that rank and number of years of service made between now and the date of his actual retirement, irrespective of his actual rank or years of creditable service at retirement).

CP at 8.

The 2022 QDRO awarded Laurie 27.6557 percent of the disposable military retired pay Clayton would have received had he retired with a retired pay base "of $4,586.10 and with 22 years and 9 months of creditable service on December 31, 2019." CP at 266.

Clayton argues the 2015 order was not ambiguous and therefore, not subject to clarification nor modification. Clayton further argues that even if the 2015 order was ambiguous, the trial court could not modify the order, only clarify it. Clayton asserts the 2022 QDRO modified the substantive terms of the 2015 order and the dissolution decree by: (1) granting Laurie more than 50 percent of the marital portion awarded to her in the decree while simultaneously reducing Clayton's right to receive all remaining retirement funds, (2) calculating Clayton's monthly disposable retired pay based on 22 years and 9 months of service instead of 20 years, (3) calculating the High-3 based on Clayton's actual date of retirement, not the date of divorce, which contradicts "statutory increases" language, and (4) calculating the "Retired Pay Multiplier" as of Clayton's actual retirement date in 2019, not the date of divorce. Br. of Appellant at 28-35.

We agree with Clayton that the trial court's 2022 QDRO modified, not clarified, the parties' rights under the 2015 order.

A.    *The 2015 Order Was Ambiguous*

We review a trial court's interpretation of a dissolution decree de novo. *Lee v. Kennard*, 176 Wn. App. 678, 688, 310 P.3d 845 (2013). If a decree is ambiguous, we apply the general rules of statutory and contract construction to discern the intention of the court that entered it. *In re Marriage of Thompson*, 97 Wn. App. 873, 878, 980 P.2d 1287 (1999).

A trial court cannot modify its own decree unless there are conditions justifying the reopening of the judgment, such as the substantial change of circumstances required to modify a child support order. RCW 26.09.170(1); *see also Thompson*, 97 Wn. App. at 878. An ambiguous decree cannot be modified, but may be clarified. RCW 26.09.170(1); *see also Thompson*, 97 Wn. App. at 878.

When reviewing an ambiguous decree, we are generally limited to examining the decree's provisions. *In re Marriage of Chavez*, 80 Wn. App. 432, 435-36, 909 P.2d 314 (1996). A decree is ambiguous if it fails to specify how, and at what point in time, a pension is to be divided between spouses. *Chavez,* 80 Wn. App. at 435. In *Chavez*, the decree stated that the spouse was entitled to "50 [percent] of Respondent's military retirement pension," and this court held the decree was clearly ambiguous because it did not specify how and when the pension was to be divided in half. *Chavez*, 80 Wn. App. at 434-35.

Similar to the decree in *Chavez*, here, the 2015 order awarded Laurie "a percentage of [Clayton's] disposable military retired pay, to be computed by multiplying 50% times a fraction" but failed to specify when the pension was to be divided in half (i.e., the date at which the pension is to be valued). CP at 8. Thus, the 2015 order was ambiguous.

B.      *The Trial Court Modified the 2015 Order*

Clayton argues the 2022 QDRO modified the substantive terms of the 2015 order with respect to each term of the hypothetical formula above, which increased Laurie's share of Clayton's military pension awarded to her in the dissolution decree and in the 2015 order. Specifically, Clayton claims that the date of his divorce from Laurie, September 30, 2014, should have been the hypothetical retirement date for all parts of the formula, not the date of his actual

retirement—December 31, 2019—that the trial court used. We agree that the 2022 QDRO modified the parties' rights in the 2015 order regarding Clayton's retirement date but do not decide the correct retirement date to use. Because the language of the 2015 order is unresolvably ambiguous and the intent of the court cannot be ascertained by the language in the 2015 order, we reverse for the trial court to reopen the property distribution solely to address this issue. We do not address Clayton's other arguments.

A court modifies a decree when it reduces or extends rights given to one party beyond the scope originally intended. *Thompson*, 97 Wn. App. at 878. In contrast, a court clarifies a decree when it merely defines rights already given, "spelling them out more completely if necessary." *Thompson*, 97 Wn. App. at 878.

The 2015 order dictated that the formula to determine Laurie's share[9] is:

50 percent x (151 months of marriage/Clayton's total months of creditable military service) x Disposable Retired Pay

*See* CP at 8.

The 2015 order did not provide a formula for the calculation of Clayton's disposable retired pay and was ambiguous as to whether Clayton's pension should be valued at the date of the divorce or his actual retirement. In determining Clayton's disposable retired pay, the 2015 order only specified that

---

[9] The parties agree that Laurie's resulting marital share is 27.6557 percent of Clayton's disposable retired pay, so this percentage is not in dispute here.

> [Clayton] shall be deemed to have retired as an E7 Master Sergeant *with 20 years of creditable military service* (including any *statutory increases* in Disposable Retired Pay for a service member of that rank and number of years of service *made between now and the date of his actual retirement, irrespective of his actual rank or years of creditable service at retirement*).

CP at 8 (emphasis added).

In the 2022 QDRO, the trial court calculated Clayton's disposable retired pay using the following formula:

> Clayton's disposable retired pay = Retired Pay Base (High-3) x Service Percent Multiplier
>
> Service Percent Multiplier = 2.5 percent x Number of Years of Active Duty Service

*See* CP at 101. It is not clear from the record whether Clayton is contesting the use of this formula.

Essentially, the parties' dispute appears to focus on whether the trial court should have used the date of divorce or date of Clayton's actual retirement to establish the salary paid to an E-7 master sergeant with 20 years of creditable military service and whether it was correct to use 22 years and 9 months (273 months) to calculate the service percent multiplier.

Here, the trial court implemented "a hybrid" method in which it calculated Clayton's High-3 using 20 years (240 months) of service, measured as if Clayton retired on his actual retirement date as an E-7 master sergeant with 240 months of service and calculated the service percent multiplier using 273 months of service. Rept. of Proc. (RP) at 19. The "hybrid" method used by the court does not appear to clarify the parties' rights established in the 2015 order, but instead modified the parties' rights.

Clayton asserts the parties' intent in 2015 was to calculate the High-3 using 240 months of service, measured as if he retired *on the date of divorce* as an E-7 master sergeant with 240 months of service. Under Clayton's interpretation, the trial court modified the 2015 order. Laurie maintains that the trial court's 2022 QDRO calculation was correct. But both parties' proposed interpretations require us to supply terms that are not in the 2015 order. In adopting either party's interpretation, it requires us to do more than just spell out the terms more completely. The language of the 2015 order is unresolvably ambiguous such that we cannot construe the 2022 QDRO consistent with the trial court's intent in 2015.

The trial court's imputation of values and calculation of disposable retired pay went beyond spelling out more completely the parties' rights already given in the 2015 order and dissolution decree. In implementing the 2022 QDRO, the trial court modified the 2015 order by reducing Clayton's rights and expanding Laurie's rights given in the decree. Thus, the trial court improperly modified the 2015 order.[10] We reverse the trial court's 2022 QDRO and remand the matter. On remand, the trial court should reopen the property distribution solely to calculate the distribution of Clayton's disposable retired pay.

In light of our decision to reverse and remand to the trial court, we do not reach Clayton's remaining arguments—that it was error for the trial court to order Clayton to pay back pay to Laurie, find that Laurie did not act in bad faith, include a "Continued Jurisdiction" clause in the 2022 QDRO, include a waiver of privacy statement in the discovery clause of the 2022 QDRO,

---

[10] Clayton argues the removal of language concerning statutory increases in the 2022 QDRO modified and nullified the 2015 order. Clayton also argues the trial court's calculation of Laurie's share of his military pension is incorrect. In light of our decision, we do not reach these arguments.

and include language in the 2022 QDRO that Clayton "prepared and consented" to the order. Br. of Appellant at 50.

## ATTORNEY FEES

### I. AT TRIAL

Clayton claims the trial court erred by requiring him to pay Laurie's trial attorney fees. Notably, the trial court's order states Clayton is liable for Laurie's attorney fees yet also states that he is not liable for Laurie's attorney fees. The trial court's order contains a scrivener's error, which is a clerical mistake that, when amended, would correctly convey the trial court's intention based on other evidence. *State v. Wemhoff*, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022).

On remand, the trial court should correct this scrivener's error in the 2022 QDRO.

### II. ON APPEAL

Clayton claims he should be awarded attorney fees on appeal pursuant to RAP 18.1(a), RCW 26.09.140, and on the basis of intransigence. Both parties claim a need for assistance and the other party's ability to pay and make claims of intransigence. We disagree and decline to award attorney fees on appeal.

RCW 26.09.140, which applies in dissolution cases, states in relevant part that "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." An award is based upon a balancing of the needs of the requesting party against the other party's ability to pay. *In re Marriage of Lilly,* 75 Wn. App. 715, 720, 880 P.2d 40 (1994). Laurie has submitted an affidavit of financial need as required by RAP 18.1(c), but Clayton has not submitted an affidavit.

16

We may also consider "the extent to which one spouse's intransigence caused the spouse seeking a fee award to require additional legal services." *In re Marriage of Crosetto,* 82 Wn. App. 545, 563, 918 P.2d 954 (1996). The financial resources of the spouse seeking fees becomes irrelevant once intransigence is established. *Crosetto,* 82 Wn. App. at 564. "Intransigence is the quality or state of being uncompromising." *In re Marriage of Schumacher,* 100 Wn. App. 208, 216, 997 P.2d 399 (2000).

The record does not reflect a continual pattern of obstruction on either party's part. Furthermore, the trial court noted that it "[did not] see that anybody has done anything recalcitrant or what have you that would justify awarding fees to one [party] or the other." RP at 21. Aside from Clayton and Laurie's claims that they incurred more expenses, they provide minimal substantiation for their claims. Moreover, there is no showing that Laurie's CR 60 motion or Clayton's appeal was brought in bad faith. While Laurie has a demonstrated need, it is unclear that Clayton has an ability to pay. And Clayton has not demonstrated need nor Laurie's ability to pay.

We deny both requests for appellate attorney fees.

## CONCLUSION

We reverse and remand. On remand, the trial court should reopen the property distribution solely to calculate the distribution of Clayton's disposable retired pay. On remand, the trial court should also correct the scrivener's error in the 2022 QDRO regarding attorney fees. And we deny both parties' requests for appellate attorney fees.

No. 57344-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J._

Che, J.

We concur:

_Cruser, C.J._

Cruser, C.J.

_Price, J._

Price, J.