**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Marriage of: | No. 60680-1-II |
| JENAE HOFFNER, | |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| DYLAN HOFFNER, | |
| Respondent, | |

CHE, J. — Jenae Hendricks (formerly known as Jenae Hoffner) appeals a denial of a motion to enforce a term of a final dissolution decree between herself and Dylan Hoffner. Through a CR 2A agreement, Hoffner agreed to pay a specific bank account debt, which was associated with Hendricks' car. However, the parties later agreed that Hendricks would trade in her car, Hoffner would cosign onto a replacement car, and Hoffner would make monthly payments on the replacement car until he paid the amount remaining from what he had been responsible for under the decree. The debt on the replacement car was eventually paid off in full by insurance following an accident. Hendricks brought a motion to enforce the decree, a superior court commissioner denied the motion because it found that the debt Hendricks sought to enforce was extinguished by the insurance payment. Hendricks argues that the trial court

erred in making this finding. Under these facts, we disagree and, accordingly, affirm the trial court's ruling.

FACTS

Through a final divorce decree, Hendricks and Hoffner were required to pay certain debts as provided by a CR 2A agreement between the parties. The agreement provided that the parties' home would be sold and that Hoffner would pay the mortgage up to the point of sale. The proceeds from the sale would first reimburse Hoffner for the mortgage payments made between the decree's date to the sale of the home. Next, the proceeds would pay off debts listed and circled in Exhibit B, attached to the agreement. Those identified debts included "Alaska account number ending in xxxxx71-L01 in the amount of $57,638.32," which the parties agree was a loan connected to Hendricks' car.[1] Clerk's Papers (CP) at 31. Finally, the parties would split any remaining proceeds with 60 percent to Hendricks and 40 percent to Hoffner.

When the house sold, there was a shortfall in the anticipated proceeds and $27,000 remained due on the Alaska account. Hendricks and Hoffner agreed that Hoffner would pay off the remaining amount in installments.[2] The car tied to the Alaska account then experienced mechanical issues. Hoffner agreed that Hendricks would trade in the car, Hoffner would cosign

---

[1] In Exhibit B, the Alaska account xxxxx71-L01 was listed as a sole and separate obligation to be paid by Hoffner but had also been circled, per the CR2A agreement, as a debt the parties agreed to be paid with the anticipated proceeds from sale of the home before any remaining proceeds of the anticipated home sale were to be divided between Hoffner and Hendricks. *See* CP at 12-13.

[2] According to Hendricks, Hoffner would have had to pay the remaining amount in a lump sum, but Hendricks signed "a waiver" drafted by Hoffner's attorney which allowed Hoffner to make payments in installments. CP at 87. The waiver, any writing documenting this agreement, or more details about its contents are not part of the record in this appeal.

on a replacement car, and Hoffner would pay Hendricks monthly payments on the replacement car's debt until the amount of debt remaining from the first car, approximately $19,000, was paid in full. Hoffner paid the insurance on the replacement car.

Before this loan was satisfied, Hendricks' replacement car was totaled in an accident. Insurance paid in full the remaining loan debt on the replacement car. According to Hendricks, the insurance payment did not provide her with sufficient funds to get another car. Hendricks contacted Hoffner, asking him to cosign on a new car and resume making payments for the amount insurance had paid out on the replacement car's debt.[3] Hoffner refused.

Hendricks filed a motion to enforce the final divorce decree, alleging that Hoffner refused to reimburse Hendricks for the loan amount the insurance paid after the replacement vehicle was totaled. Hendricks requested that the trial court award her a judgment for the amount the insurance paid. After a hearing on the motion, the superior court commissioner denied Hendricks' motion, finding that "the debt that [Hendricks] was trying to enforce from the decree has been extinguished through the insurance payment." CP at 96.

## ANALYSIS

Hendricks argues that the trial court erred and abused its discretion by finding that Hoffner's debt obligation was extinguished by the insurance payment. She asserts that the trial court failed to account for the Alaska account being tied to Hendricks' car and that the trial court's ruling unjustly enriched Hoffner. Hendricks contends that if Hoffner had paid off the Alaska account balance, and insurance paid the value of the vehicle, she would be able to use the

---

[3] Hendricks contended Hoffner still owed $16,583 on the Alaska account.

insurance to purchase another vehicle instead of it paying off the debt. In response, Hoffner

argues that his obligation under the decree was to pay a certain debt, not ensure Hendricks'

continued possession of a vehicle. Given the record before us, we agree with Hoffner.

When the trial court has not taken any evidence in ruling on a motion to enforce, we

review de novo its decision. *In re Marriage of Weiser*, 14 Wn. App. 2d 884, 903, 475 P.3d 237

(2020). Additionally, we review de novo the trial court's interpretation of a dissolution decree.

*Id.* at 912; *In re Marriage of Thompson*, 97 Wn. App. 873, 877, 988 P.2d 499 (1999).

In family law matters, the trial court has "broad equitable powers." *In re Marriage of*

*Morris*, 176 Wn. App. 893, 903, 309 P.3d 767 (2013); *see also In re Marriage of Farmer*, 172

Wn.2d 616, 624, 259 P.3d 256 (2011). "'Having before it at the outset a cause cognizable in

equity, the court retain[s] jurisdiction over the subject matter and the parties to be affected by its

decree for all purposes—to administer justice among the parties according to law or equity.'" *In*

*re Marriage of Langham and Kolde*, 153 Wn.2d 553, 560, 106 P.3d 212 (2005) (alteration in

original) (quoting *Yount v. Indianola Beach Ests., Inc.*, 63 Wn.2d 519, 524-25, 387 P.2d 975

(1964)). However, absent certain conditions justifying the reopening of a dissolution decree, the

trial court lacks the authority to modify the decree. *Weiser*, 14 Wn. App. 2d at 904. "'A decree

is modified when rights given to one party are extended beyond the scope originally intended, or

reduced.'" *Id.* (quoting *Thompson*, 97 Wn. App. at 878).

Here, the dissolution decree assigned specific debt in a specific account and for a specific

amount to Hoffner. It is undisputed that, after entering the decree, the parties came to some

separate agreement that included agreeing that the debt would be "transferred" to a replacement

car. Br. of Appellant at 11. Based on the record, the parties agreed to certain terms so that

Hoffner could satisfy his responsibilities under the decree while allowing Hendricks to trade in her car for a replacement. Through their separate agreement and for his part of their bargain, Hoffner agreed to making monthly payments on Hendricks' replacement car's debt. However, before Hoffner could make payments equating to the amount he was responsible for under their agreement, insurance—which Hendricks does not dispute that Hoffner had been paying for—covered the replacement car's debt in full.

Assuming without deciding that an enforceable term of the decree existed after the parties' separate agreement, the insurance payment eliminated the replacement car's debt that the parties agreed Hoffner would pay in lieu of paying the specific debt delineated in the decree. Here or below, Hendricks presented no facts indicating that the Alaska account remained the same, in nature or in character, after the parties' agreement to trade in her initial car and have Hoffner cosign on a replacement. Nor has Hendricks presented any facts that the Alaska account, the debt Hoffner was responsible for through the decree, had not been paid in full. Because the parties agreed to transfer the debt Hoffner owed under the decree to a responsibility associated with a new debt and that new debt was subsequently satisfied, there remained no debt tied to the Alaska account to enforce under the decree.

Given the facts before us, we conclude that the trial court did not err in finding that Hoffner's debt obligation under the decree was extinguished by the insurance payment.

CONCLUSION

Under these circumstances, the trial court did not err in denying Hendricks motion to enforce the decree. Accordingly, we affirm.

No. 60680-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J._
Che, J.

We concur:

_Cruser, C.J._
Cruser, C.J.

_Price, J._
Price, J.